# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Appellant,

v.

BRIAN MICHAEL ARANDA,
Defendant and Respondent.

S214116

Fourth Appellate District, Division Two
E056708

Riverside County Superior Court
RIF154701

April 4, 2019

Justice Corrigan authored the opinion of the court, in which
Chief Justice Cantil-Sakauye and Justices Liu, Cuéllar,
Kruger, and Groban concurred.

Justice Chin filed a dissenting opinion.

PEOPLE v. ARANDA

S214116

Opinion of the Court by Corrigan, J.

*Stone v. Superior Court* (1982) 31 Cal.3d 503 (*Stone*) concluded that a court must accept a partial verdict of acquittal as to a charged greater offense when a jury has expressly indicated it has acquitted on that offense but has deadlocked on uncharged lesser included offenses. The question here is whether the *Stone* rule has been abrogated by the United States Supreme Court's decision in *Blueford v. Arkansas* (2012) 566 U.S. 599 (*Blueford*), which concluded that federal double jeopardy principles do not require a court to accept a partial verdict. We conclude the *Stone* rule survives as an interpretation of the state Constitution's double jeopardy clause. The trial court's failure here to receive a partial acquittal verdict on first degree murder rendered the declaration of a mistrial on that charge without legal necessity. Accordingly, defendant may not be retried on that allegation. As the Court of Appeal reached the same conclusion, we affirm the judgment.

## I. BACKGROUND

Evidence was introduced that, on the night of December 1, 2009, defendant received texts from his girlfriend, 15-year-

old Alexis C.,[1] asking for help because she feared her father was going to rape her as he had done before. Defendant went to her home and found her asleep in bed with her father. As defendant tried to take her out of the house, the father awakened and a fight ensued. During that confrontation, defendant fatally stabbed the father with an ice pick he had brought with him.

Defendant was charged with a single count of murder.[2] At the close of evidence, the court instructed the jury on first degree murder, second degree murder, and voluntary manslaughter.[3] The jury received "guilty" verdict forms for each offense and a single "not guilty" form.

On the third day of deliberations, the jury reported discussions had become hostile. After consulting with counsel, the court asked the foreperson "how things are going" and if the court could do anything to assist. The foreperson reported the jury was "at a stalemate" and explained: "So we've basically ruled out murder in the first degree. So then we moved to murder in the second degree. . . . [¶] So we worked down to voluntary manslaughter, but there's still a couple that are still stuck on second degree." The foreperson later

---

[1]    The information charged Alexis C. as a codefendant. The court severed her case from defendant's and tried defendant first.

[2]    The information also alleged an enhancement for personal deadly weapon use. (Pen. Code, former § 12022, subd. (b)(1).)

[3]    Penal Code sections 187, subdivision (a), 189, 192, subdivision (a); CALCRIM Nos. 500, 520, 521, 522, 570, 571.

repeated that some jurors "are stuck on second degree and then went down to voluntary," but they were "working through it." Deliberations continued.

The next court day, defense counsel asked the jury be given a "not guilty" verdict form for first degree murder. The prosecutor objected. The foreperson asked to speak with the court and again reported the jury was at an impasse, explaining that one juror "thinks it's second degree," "[a]nd then we've got two that are on the side of voluntary. And then we've got nine that are not guilty." Outside the foreperson's presence, the prosecutor expressed his view that the jury was "hopelessly deadlocked." Defense counsel urged the jury was frustrated but not deadlocked. The court brought the panel into the courtroom to ask if anything would assist them. As they waited for the jury, counsel debated the defense request for a "not guilty" verdict form on first degree murder. The court denied the request, stating: "I don't want to change horses in midstream. We sent it in a certain way, and to change anything makes it seem like we're directing them as to which way to think, and I don't want to do that." After answering some questions about jury instructions, the court ordered the jury to deliberate for the remainder of the day, about 40 minutes. After that time expired, the jury returned, and the foreperson said they were "still at the same spot." The court asked whether "it's still basically nine to two to one," and the foreperson replied it was. The court concluded the jury was deadlocked and declared a mistrial.

The defense moved to dismiss the first degree murder allegation on double jeopardy grounds. Relying on *Stone*, defendant argued the court's failure to allow the jury to acquit him of first degree murder barred a retrial on that charge.

3

Defendant also argued double jeopardy barred a trial on second degree murder and voluntary manslaughter as well. The court[4] ultimately dismissed the first degree murder charge but declined to dismiss the lesser offenses. The People unsuccessfully sought reconsideration based upon *Blueford*, which had recently been decided.

The People, represented by the Riverside County District Attorney's Office, appealed the dismissal of the first degree murder charge. The Court of Appeal affirmed. We likewise affirm.

## II. DISCUSSION

### A. *Legal Background*

Under the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution, a person may not be twice placed in jeopardy for the same offense. This double jeopardy principle bars a second prosecution for the same crime after an acquittal or conviction. (*People v. Anderson* (2009) 47 Cal.4th 92, 103-104 (*Anderson*).) Even if a jury returns no verdict on a particular charge, retrial is only permitted in limited circumstances. " 'Retrial after discharge of a jury without "manifest" (in federal terminology) or "legal" necessity violates the protections afforded under both' the federal and state constitutional double jeopardy clauses." (*People v. Carbajal* (2013) 56 Cal.4th 521, 534 (*Carbajal*), quoting *People v. Halvorsen* (2007) 42 Cal.4th 379, 425 (*Halvorsen*).) Although "the failure of a jury to agree on a

---

[4] Judge Helios "Joe" Hernandez presided over the trial, while Judge Michele D. Levine heard the dismissal motions.

verdict is an instance of 'manifest necessity' permitting retrial of the defendant" (*Anderson*, at p. 104), "granting an unnecessary mistrial bars retrial" under double jeopardy principles (*People v. Hernandez* (2003) 30 Cal.4th 1, 8).

*Stone* held that "the trial court is constitutionally obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense. Failure to do so will cause a subsequently declared mistrial to be without legal necessity." (*Stone*, *supra*, 31 Cal.3d at p. 519.) Stone was charged with a single count of murder. The jury was instructed on, and received guilty verdict forms for, first and second degree murder, and voluntary and involuntary manslaughter. It was given a single verdict form for acquittal on all charges, as well as a verdict form for "justifiable homicide." (*Id.* at p. 507.) After seven days of deliberations, the foreman reported in open court that there were no votes for first or second degree murder but various votes for both forms of manslaughter and justifiable homicide. Each juror, in response to court inquiry, stated a belief that the jury was hopelessly deadlocked. (*Ibid.*) The court denied defense counsel's request to accept a partial verdict of acquittal on murder and ordered further deliberations. After another day and a half of deliberations, the foreman again indicated that there were no votes for first or second degree murder and various votes for manslaughter and justifiable homicide. The court declared a mistrial and discharged the jury. (*Id.* at pp. 508-509.)

*Stone* reasoned there was no legal necessity for a mistrial as to murder and a partial verdict of acquittal could have been taken. (*Stone*, *supra*, 31 Cal.3d at pp. 514-519.) The court

initially observed that, under our statutory scheme, the prosecutor has discretion to separately charge all lesser included offenses (see Pen. Code, § 954) or to charge only the greater offense (see Pen. Code, § 1159). (*Stone*, at p. 517.) If included offenses are separately charged, the court must inquire whether the jury has reached a verdict on any of the charged counts and receive any verdicts before discharging the jury. (Pen. Code, §§ 1160, 1164; see discussion *post*.) *Stone* reasoned that if our statutory scheme requires the taking of partial verdicts when included offenses are charged separately, it would be "anomalous to formulate a rule that prevents a trial court from receiving a partial verdict on a greater offense on which the jury clearly favors acquittal merely because the prosecutor elected to charge only that offense, and left it to the court to instruct on any lesser included offense supported by the evidence. In addition to seriously infringing on the defendant's double jeopardy interest in avoiding retrial for offenses on which he has been factually acquitted, such a rule would make his substantive rights turn on the formality of whether he was charged in separate counts with the greater offense and the lesser included offense, or was charged in a single count with only the greater offense." (*Stone*, at pp. 517-518.)

The *Stone* rule "protects a defendant from retrial when the jury agrees that the greater offense was not proven but cannot agree on a lesser included offense. Without the rule, a general declaration of mistrial would disguise the fact that the jury agreed the defendant was not guilty of the greater offense, making the defendant subject to retrial on both the greater and lesser offenses." (*Anderson, supra*, 47 Cal.4th at p. 114.) We further clarified in *People v. Kurtzman* (1988) 46 Cal.3d 322

(*Kurtzman*) that, although a jury may consider the charges in any order, "the jury must acquit of the greater offense before returning a verdict on the lesser included offense . . . ." (*Id.* at p. 330.) This procedure is known as "the acquittal-first rule." (*Anderson*, at p. 114.)

The People argue *Stone* has been overruled by *Blueford*, which held that the federal double jeopardy clause does not *require* a court accept a partial verdict of acquittal with respect to a greater offense. Blueford was charged in Arkansas state court with a single count of capital murder. The jury received verdict forms for that offense and for included offenses of first degree murder, manslaughter, and negligent homicide. It was given a single acquittal form. After jurors declared an impasse during deliberations, the foreperson reported that the jury was " 'unanimous against' " capital and first degree murder but deadlocked on manslaughter. (*Blueford, supra,* 566 U.S. at p. 603.) The court ordered further deliberations. The defense requested verdict forms be provided, permitting the jury to acquit Blueford of capital and first degree murder. The court refused. The jury remained deadlocked, and the court declared a mistrial. (*Id.* at p. 604.)

Blueford argued the foreperson's report indicating the jury was " 'unanimous against' " capital and first degree murder constituted an acquittal for double jeopardy purposes. (*Blueford, supra,* 566 U.S. at p. 603.) The high court rejected the claim. The court reasoned the foreperson's report "was not a final resolution of anything. When the foreperson told the court how the jury had voted on each offense, the jury's deliberations had not yet concluded. . . . The fact that deliberations continued after the report deprives that report of the finality necessary to constitute an acquittal on the murder

offenses." (*Id*. at p. 606.) "It was therefore possible for Blueford's jury to revisit the offenses of capital and first-degree murder, notwithstanding its earlier votes. And because of that possibility, the foreperson's report prior to the end of deliberations lacked the finality necessary to amount to an acquittal on those offenses, quite apart from any requirement that a formal verdict be returned or judgment entered." (*Id*. at p. 608.)

With respect to the question of manifest necessity, Blueford argued the court was obligated to take some action, "whether through partial verdict forms or other means, to allow the jury to give effect to those votes, and then consider[] a mistrial only as to the remaining charges." (*Blueford, supra*, 566 U.S. at p. 609.) Again, the *Blueford* court disagreed: "We have never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse—let alone to consider giving the jury new options for a verdict. [Citation.] As permitted under Arkansas law, the jury's options in this case were limited to two: either convict on one of the offenses, or acquit on all. The instructions explained those options in plain terms, and the verdict forms likewise contemplated no other outcome. . . . When the foreperson disclosed the jury's votes on capital and first-degree murder, the trial court did not abuse its discretion by refusing to add another option—that of acquitting on some offenses but not others. That, however, is precisely the relief Blueford seeks—relief the Double Jeopardy Clause does not afford him." (*Id*. at pp. 609-610, fn. omitted.)

### B. Stone *Survives* Blueford *Under California Law*

*Blueford* makes clear that the federal double jeopardy clause does not require the taking of a partial verdict of acquittal on a greater offense when the jury has indicated a deadlock on a lesser included offense. To the extent *Stone* suggested otherwise, it has been abrogated by *Blueford*.

But this resolution does not end the inquiry. Although the Fifth Amendment does not *require* the taking of partial verdicts, neither does it forbid the practice. *Blueford* noted Arkansas law precluded the taking of partial verdicts. (*Blueford*, *supra*, 566 U.S. at pp. 609-610; see *Blueford v. State* (Ark. 2011) 370 S.W.3d 496, 502.) The high court in *Blueford* reasoned the court did not abuse its discretion by not adding a third option (the taking of partial verdicts) not otherwise contemplated by state law. (*Blueford,* at pp. 609-610.) *Blueford* was thus silent as to whether a state may require the taking of partial verdicts under its own laws.

The People primarily argue that, because *Stone* relied *exclusively* upon the federal Constitution, and *Blueford* clarified that federal double jeopardy principles do not require the taking of partial verdicts, *Stone* has implicitly been overruled by *Blueford*. An examination of *Stone* reflects it relied on its understanding of both federal and state constitutional principles. *Stone* began its analysis by citing both the Fifth Amendment and article I, section 15 (formerly § 13) of our state Constitution. Under the latter provision, *Stone* noted this court was "free to delineate a higher level of protection," and cited a case that, in fact, did so. (*Stone*, *supra*, 31 Cal.3d at p. 510; see *Curry v. Superior Court* (1970) 2 Cal.3d 707, 716 (*Curry*).) Although the People argue that *Stone* did

not *expressly* state it was delineating a higher level of protection under the state constitutional provision, as defendant observes, there would seem no reason to mention the provision if *Stone* intended to rely exclusively upon the federal Constitution. *Stone* thereafter cited California cases pertaining to informal verdicts of acquittal and those applying the doctrine of implied acquittal, under which a conviction on a lesser included offense constituted an implied acquittal of the greater. (See *Stone*, at p. 511; see also *id.* at pp. 511-512, fn. 5.) *Stone* then distinguished at length *People v. Griffin* (1967) 66 Cal.2d 459, a case predating application of the federal double jeopardy clause to the states. (*Stone*, at pp. 512-514.) Although *Stone* then discussed several recent United States Supreme Court cases, including *Green v. United States* (1957) 355 U.S. 184, it also cited several of our cases in accord. (See *Stone*, at pp. 515-517.) At most, *Stone* did not differentiate between the federal and state double jeopardy clauses. Its discussion of both federal and state authorities largely assumed the two clauses were coextensive, at least as to this issue. (See *Stone,* at p. 516 [referencing "the double jeopardy clause" without differentiation].)

We conclude the *Stone* rule survives as an interpretation of California's double jeopardy clause. "[T]he California Constitution is a document of independent force and effect that may be interpreted in a manner more protective of defendants' rights than that extended by the federal Constitution, as construed by the United States Supreme Court." (*People v. Fields* (1996) 13 Cal.4th 289, 298 (*Fields*).) The state double jeopardy clause was included in both the 1849 and 1879 California Constitutions (see Cal. Const. of 1849, art. I, § 8; Cal. Const. of 1879, art. I, § 13), long before the high court

applied the federal clause to the states (*Benton v. Maryland* (1969) 395 U.S. 784, 794). (See *People v. Batts* (2003) 30 Cal.4th 660, 686.) In 1974, as part of a broader constitutional revision, the voters retained the double jeopardy provision (Cal. Const., art. I, § 15) and added language that "[r]ights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution" (Cal. Const., art. I, § 24). "[T]he adoption in 1974 of article I, section 24, confirmed that the California courts had the authority to adopt an independent interpretation of the state Constitution." (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 353.)[5]

On several occasions, we have construed the state double jeopardy clause to be more protective than its federal counterpart. For example, *People v. Batts, supra,* 30 Cal.4th 660 concluded that double jeopardy principles not only barred a retrial after a prosecutor commits misconduct for the purpose of triggering a mistrial, the federal standard, but also if a prosecutor commits misconduct to thwart a reasonable prospect of acquittal. (*Id.* at pp. 665-666.) *People v. Henderson*

---

[5] In 1990, the voters enacted Proposition 115, which amended article I, section 24 of the California Constitution to reflect that, in criminal cases, various rights, including the prohibition against being put twice in jeopardy, "shall be construed by the courts of this state in a manner consistent with the Constitution of the United States" and "[t]his Constitution shall not be construed by the courts to afford greater rights to criminal defendants than those afforded by the Constitution of the United States . . . ." (Stats. 1990, p. A-243.) *Raven v. Deukmejian*, *supra*, 52 Cal.3d 336 struck down this provision as an invalid constitutional revision. (See *id.* at pp. 342-343.)

(1963) 60 Cal.2d 482 held that a defendant could not receive a more severe punishment on retrial after a successful appeal, a limitation not required by the federal double jeopardy clause. (*Henderson*, at pp. 495-497; compare *People v. Collins* (1978) 21 Cal.3d 208, 216-217 [applying *Henderson*], *People v. Hood* (1969) 1 Cal.3d 444, 459 (*Hood*) [same], with *North Carolina v. Pearce* (1969) 395 U.S. 711, 719-725.) Similarly, *Cardenas v. Superior Court* (1961) 56 Cal.2d 273 declined to follow high court authority and concluded that a mistrial declared without a defendant's consent barred a retrial even if the mistrial was declared for his "benefit." (*Id.* at p. 276.) We declined to reconsider *Cardenas* even after application of the federal double jeopardy clause to the states. (*Curry*, *supra*, 2 Cal.3d at pp. 716-717.)

*People v. Hanson* (2000) 23 Cal.4th 355 (*Hanson*) is instructive. *Hanson* addressed whether imposition of a restitution fine on resentencing came within the *Henderson* rule prohibiting a more severe punishment after a successful appeal. The Court of Appeal in *Hanson* noted that the United States Supreme Court had interpreted the federal clause as *not* precluding a more severe sentence. It then held there were no " 'cogent reasons' " to construe the state provision differently. (*Hanson*, at p. 363; see *Gabrielli v. Knickerbocker* (1938) 12 Cal.2d 85, 89.) This court rejected that analysis as "flawed" and questioned whether cogent reasons were required for adhering to a preexisting interpretation of the state Constitution. (*Hanson*, at p. 363.) *Hanson* distinguished *People v. Monge* (1997) 16 Cal.4th 826, which concluded that federal double jeopardy principles did not bar retrial of a prior conviction allegation reversed on appeal for insufficient evidence. (*Id.* at pp. 831-843 (lead opn. of Chin, J.).) *Monge*

also reasoned that no cogent reasons existed to interpret the state double jeopardy clause differently from its federal equivalent. (*Monge*, at pp. 843-845 (lead opn. of Chin, J.).)

*Hanson* reasoned that *Monge* "cannot be read to suggest this court intends a wholesale reevaluation of state double jeopardy principles" whenever it is apparent that federal double jeopardy principles have diverged. (*Hanson, supra*, 23 Cal.4th at p. 364.) *Hanson* noted that the issue in *Monge* "remained an open question as to both this court and the United States Supreme Court" and its application of the cogent reasons standard "must thus be understood as applying to this narrow, previously undecided, issue, not as a signal to reassess matters firmly settled under state constitutional law." (*Ibid.*) *Hanson* concluded that "nothing in *Monge* gives license to jettison the reasoning of *Henderson* in circumstances where it plainly applies." (*Ibid.*) *Hanson* ultimately reaffirmed the reasoning of *Henderson* and its progeny. (*Id.* at pp. 365-366; cf. *People v. Statum* (2002) 28 Cal.4th 682, 693-694.)

Similarly here, nothing in the reasoning of *Blueford*, decided 30 years after *Stone*, suggests we should now abandon our long-established precedent. *Stone* observed that "[o]ne of the primary purposes of the double jeopardy protection is to prevent successive prosecutions for the same offense" (*Stone, supra*, 31 Cal.3d at pp. 514-515) and concluded that a procedure to accept a partial acquittal on a greater offense was necessary to prevent "seriously infringing on the defendant's double jeopardy interest in avoiding retrial for offenses on which he has been factually acquitted" (*id.* at p. 518). (See

*Anderson, supra,* 47 Cal.4th at p. 114.) *Stone* articulated a fairness rationale for its holding based upon our criminal procedure. As *Stone* explained, the Penal Code[6] allows a prosecutor to charge an offense and all of its lesser included offenses in separate counts. Section 954 permits an accusatory pleading to charge "different statements of the same offense."[7] Although, ordinarily, a defendant "may be convicted of any number of the offenses charged" (§ 954), "a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses" (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034). (See *People v. Sanders* (2012) 55 Cal.4th 731, 736; *People v. Pearson* (1986) 42 Cal.3d 351, 355,

---

[6] Subsequent references will be to the Penal Code unless otherwise noted.

[7] Section 954 provides in full: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count."

overruled on another ground in *People v. Vidana* (2016) 1 Cal.5th 632, 651.)

Section 1160 provides in relevant part: "Where two or more offenses are charged in any accusatory pleading, if the jury cannot agree upon a verdict as to all of them, they may render a verdict as to the charge or charges upon which they do agree, and the charges on which they do not agree may be tried again." "Section 1160 implements the legal necessity doctrine in the multiple count situation by permitting the trial court to receive a verdict on one count and to discharge the jury with respect to another count on which the jury deadlocked without jeopardy attaching as to that charge." (*Fields*, *supra*, 13 Cal.4th at p. 300; see *Anderson*, *supra*, 47 Cal.4th at p. 104.) "Where the offenses are in fact greater and lesser included, however, this language must be interpreted in light of the doctrine of implied acquittal." (*Kurtzman*, *supra*, 46 Cal.3d at p. 333.) Because a conviction on a lesser included offense will be deemed an implied acquittal of the greater offense, *Kurtzman* requires the jury to *expressly* acquit of the greater offense before rendering a verdict on a lesser offense, noting such a requirement "represents an appropriate balancing of interests." (*Ibid*.) Indeed, "one significant advantage to the procedure for receipt of partial verdicts of acquittal established in *Stone* and further refined in *Kurtzman* is that, when properly employed," reliance on the doctrine of implied acquittal is unnecessary. (*Fields*, at p. 309.)

In a multi-count case, section 1160 generally requires a trial court to allow the jury to return a verdict on any count upon which it agrees. (Cf. *Carbajal*, *supra*, 56 Cal.4th at pp. 530-531 [describing procedures for accepting a jury verdict].) If the charged counts involve included offenses, the court must

accept an acquittal verdict on a greater offense even if the jury could not agree on any of the separately charged lesser offenses. (See *Stone, supra,* 31 Cal.3d at p. 517.)

As *Stone* observed, our Penal Code allows the jury the power to "find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense." (§ 1159; *Stone, supra,* 31 Cal.3d at p. 517.) The prosecution may charge a single offense and the trial court must instruct on any lesser included offenses supported by the evidence. (See *Fields, supra,* 13 Cal.4th at p. 308; *Hood, supra,* 1 Cal.3d at pp. 449-450.) In this scenario, however, if the jury deadlocks on a lesser included offense, section 1160 would not explicitly obligate the court to accept an acquittal verdict on the greater offense because all the included offenses relate to a single count.

*Stone* observed it would be "anomalous" to preclude a court from accepting an acquittal verdict on a greater offense in a single-count case when our statutory scheme would *require* a court to accept the same verdict had the prosecutor separately charged the included offenses. (*Stone, supra,* 31 Cal.3d at p. 517.) A defendant's double jeopardy rights should not "turn on the formality of whether he was charged in separate counts with the greater offense and the lesser included offense, or was charged in a single count with only the greater offense." (*Id.* at p. 518.) We have reiterated that "[i]t is well established . . . that the prosecutor's method of charging a defendant does not affect a defendant's double jeopardy rights." (*Fields, supra,* 13 Cal.4th at p. 308.) As a matter of state constitutional law, *Stone*'s reasoning supports the taking

16

of partial verdicts regardless of how the prosecution charges the case.  (*Stone*, at p. 519.)

The People argue that the "alleged charging inequity is nothing more than a legal fiction" because "[i]n practice, a prosecutor rarely, if ever, charges separate counts to enumerate the degrees of murder because to do so would risk the defendant entering a plea of guilty to one of the lesser charged offenses."  The argument misses the mark because the law is to the contrary.  Double jeopardy principles do not allow a defendant to plead guilty to a lesser included offense over prosecutorial objection to thwart the prosecution of a greater offense.  (See *Ohio v. Johnson* (1984) 467 U.S. 493, 500-502; *Anderson, supra*, 47 Cal.4th at pp. 109-110.)

The dissent suggests our conclusion is at odds with *People v. Fields, supra*, 13 Cal.4th 289.  *Fields* reasoned that, for double jeopardy purposes, a conviction on a lesser included offense did not constitute an implied acquittal of the greater offense barring retrial where the jury *expressly* deadlocked on the greater.  (*Id.* at pp. 301-303.)  However, *Fields* concluded, because the trial court had accepted and recorded the jury's guilty verdict on the lesser offense, retrial on the greater offense was barred by statute.  (*Id.* at pp. 305-310; see § 1023.)  Rather than accept a verdict on a lesser included offense under such circumstances, *Fields* observed "the trial court may properly decline to receive and record this verdict of conviction pending further deliberations by the jury" and remind the jury it may not convict on a lesser included offense until it has acquitted on the greater.  (*Fields*, at p. 310; *Kurtzman, supra*, 46 Cal.3d at p. 330.)

The dissent asserts that "[t]he same fairness rationale that, the *Stone* court held, mandated the taking of partial verdicts of acquittal should have mandated the taking of partial verdicts of conviction. But *Fields* concluded otherwise." (Dis. opn., *post*, at p. 7.) The dissent reasons: "A procedure permitting a partial verdict of guilt would work the same way a procedure permitting a partial verdict of acquittal is supposed to work. If the jury unanimously found the defendant was guilty of a lesser offense (for example, second degree murder), but was hopelessly deadlocked on the greater offense (for example, first degree murder), the trial court could take a verdict of guilty of second degree murder and declare a mistrial regarding first degree murder. At retrial, the jury would decide only whether the murder was of the first or second degree. This procedure would be exactly as clear (or murky) as partial verdicts of acquittal. No reason exists to require the one and prohibit the other." (*Ibid.*)

*Fields* concluded a retrial on a greater offense is barred if a court accepts a conviction on a lesser included offense because "once a conviction on the lesser offense has been obtained, ' "to [later] convict of the greater would be to convict twice of the lesser." ' " (*Fields*, *supra*, 13 Cal.4th at p. 306.) "The greater offense is . . . by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." (*Brown v. Ohio* (1977) 432 U.S. 161, 168; see § 1023.) This rule explains why "a partial verdict of guilt" (dis. opn., *post*, at p. 7) is generally not accepted and *Fields*'s application of that rule

did not call *Stone*'s reasoning into question.[8]  Indeed, *Fields* involved included offenses charged in separate counts (see *Fields*, at p. 300, fn. 2) and expressly *endorsed Stone*'s reasoning in rejecting "an analytical distinction between proceedings in which the lesser included offense was specifically charged in a separate count, and those in which the lesser offense is impliedly charged in an information charging only the greater offense in a single count." (*Id.* at p. 308.)

There is no conflict between *Stone* and *Fields*.  The reason a court should not accept a verdict when "the jury renders only a verdict of guilty on the lesser included offense" (*Fields*, *supra*, 13 Cal.4th at p. 310) is because such a verdict makes it unclear what the jury intended with respect to the greater offense.  The verdict on a lesser offense masks whether the jury intended to acquit on the greater, in which case the jury should do so expressly before convicting on a lesser, or whether it is deadlocked on the greater, whereupon the court should declare a mistrial and not accept a verdict on a lesser offense.  (*Id.* at p. 311.)  Rather than accept a verdict that perpetuates ambiguity, *Fields* suggested a procedure that clarifies the jury's intent.  Similarly in *Stone*, when the jury has affirmatively indicated it has unanimously acquitted on a

---

[8]  To clarify, *Fields* did not *bar* the taking of a guilty verdict on a lesser included offense when a jury deadlocks on the greater.  It only noted that such a verdict precludes a retrial on the greater offense.  *Fields* observed that, under some circumstances, "the People may prefer to forgo the opportunity to convict the accused of the greater offense on retrial in favor of obtaining a present conviction on the lesser included offense." (*Fields*, *supra*, 13 Cal.4th at p. 311.)

greater offense, allowing the jury to record such a verdict serves to clarify and give effect to the jury's intent. The procedures outlined in both *Stone* and *Fields* thus further the interest of promoting clarity in jury verdicts.

By requiring the taking of partial verdicts in single count cases, *Stone*'s interpretation of the state double jeopardy clause sought to eliminate an anomaly created by our criminal procedure. Although our affirmation of the *Stone* rule does not depend on the existence of any particular statutory scheme, we observe that *Stone*'s solution to this anomaly is fully consistent with other Penal Code provisions regarding the taking of verdicts. Our statutory scheme reflects a general legislative preference for giving effect to unanimous jury verdicts. "No jury shall be discharged until the court has verified on the record that the jury has either reached a verdict or has formally declared its inability to reach a verdict on all issues before it . . . ." (§ 1164, subd. (b); see also § 1140.) After deliberations, "[w]hen the jury appear they must be asked by the Court, or Clerk, whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same." (§ 1149.) "When the verdict given is receivable by the court, the clerk shall record it in full upon the minutes . . . ." (§ 1164, subd. (a).) Under these provisions, a jury cannot be discharged unless it has rendered a verdict in open court or has declared an inability to agree. The jury must declare in open court if it has unanimously agreed to a verdict and, if the jury agrees on some counts and not others, the court must accept the verdicts upon which the jury agrees. (§ 1160; cf. *People v. Anzalone* (2013) 56 Cal.4th 545, 555 [§ 1149 part of "procedural provisions designed to protect the right to a unanimous

verdict"].) The *Stone* rule, allowing verdicts of acquittal for a greater offense when the jury unanimously agrees, is fully consistent with a statutory scheme that generally requires a jury to announce when it agrees and requires the court to accept verdicts.

Our statutes also reflect a strong preference for the acceptance of acquittals. A court has discretion to clarify a jury's intention in the face of ambiguity. To that end, it may "direct the jury to reconsider their verdict" if "it appears to the Court that the jury have mistaken the law." (§ 1161.) This rule, however, only authorizes such an instruction if the jury's apparent misunderstanding underlies a *conviction* — not if it underlies an *acquittal*. (*Ibid*.) Further, "[i]f the jury persist in finding an informal verdict, from which, however, it can be clearly understood that their intention is to find in favor of the defendant upon the issue, it must be entered in the terms in which it is found, and the Court must give judgment of acquittal." (§ 1162.) This rule, too, is asymmetrical. Even if the jury renders an informal verdict in favor of the state, "no judgment of conviction can be given unless the jury expressly find against the defendant upon the issue, or judgment is given against him on a special verdict." (*Ibid*.) Thus, unlike a judgment of conviction, "a jury verdict of acquittal need not be in any particular form. [Citation.] The jury may render its verdict in any manner that unmistakably manifests its intent. The touchstone of a jury verdict of acquittal is the jury's manifestation of a definite and final intent to acquit of the offense." (*Bigelow v. Superior Court* (1989) 208 Cal.App.3d 1127, 1134.) The *Stone* rule simply provides a mechanism by which a jury may formally render an acquittal verdict on a

greater offense, providing clarity to what otherwise may be considered an informal verdict of acquittal.

Nothing in *Blueford*'s reasoning calls *Stone*'s analysis into question. As discussed, *Blueford* raised two primary concerns. First, *Blueford* suggested that a foreperson's report "was not a final resolution of anything" because "[t]he fact that deliberations continued after the report deprives that report of the finality necessary to constitute an acquittal on the murder offenses." (*Blueford, supra*, 566 U.S. at p. 606.) However, if, under the *Stone* rule, a jury is given verdict forms and given the option of rendering a unanimous verdict consistent with the foreperson's report, such a formalized verdict *would* be a final resolution of the issue. Second, *Blueford* observed that the high court has "never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse . . . ." (*Id*. at p. 609.) However, in the *Stone* scenario, the jury has unanimously acquitted a defendant of a greater offense and it is at an "impasse" only as to which of several lesser offenses may have been committed. Accepting a unanimous, final verdict on the former has nothing to do with breaking an impasse on the latter, which can be retried.

The People observe that some states have declined to require the acceptance of partial verdicts under their state double jeopardy provisions for fear of jury coercion. For example, one court suggested that "[i]nquiry concerning partial verdicts on lesser included offenses, no matter how carefully phrased and delivered, carries a significant potential for coercion," and that "[t]here is simply too great a risk that such a verdict would merely be the product of one hasty, final attempt to satisfy the judge's apparent desire for some form of

decision on the case." (*Commonwealth v. Roth* (Mass. 2002) 776 N.E.2d 437, 447, 448; see *People v. Richardson* (Colo. 2008) 184 P.3d 755, 763-764.)

We have clarified that "[a]bsent some indication of deadlock only on an uncharged lesser included offense, the suggested procedures in *Stone* do not come into play." (*People v. Marshall* (1996) 13 Cal.4th 799, 826.) The court has no duty to inquire as to the possibility of a partial verdict unless the jury has given some affirmative indication that it has acquitted on a greater offense but deadlocked only on a lesser offense. (See *id.* at pp. 826-827; *People v. McDougal* (2003) 109 Cal.App.4th 571, 579-580.) We reject the People's suggestion that an inquiry *in that circumstance* is necessarily coercive. In the face of the jury's own report, an inquiry merely allows the court to clarify whether the jury has actually reached a final decision on a greater offense or whether further deliberations may prove fruitful. It is within the court's sound discretion whether the circumstances warrant further inquiry and, thereafter, the presentation of additional verdict forms. (See *Kurtzman, supra,* 46 Cal.3d at pp. 331-332; *Stone, supra,* 31 Cal.3d at pp. 519-520.)

C. *The Court Improperly Declared a Mistrial as to First Degree Murder*

"The determination whether there is a reasonable probability of agreement rests in the sound discretion of the trial court, based on consideration of all the factors before it." (*Halvorsen, supra,* 42 Cal.4th at p. 426.) Here, there was an indication that the jury agreed defendant was not guilty of first degree murder. On three separate occasions over two court days, the jury foreperson reported that jurors were split between second degree murder, voluntary manslaughter, and a

not guilty verdict. The foreperson said the jury had "ruled out" first degree murder and had "worked down to voluntary manslaughter, but there's still a couple that are still stuck on second degree." The next day, the foreperson gave a numerical split of one vote for second degree murder, two for voluntary manslaughter and nine for an acquittal. After further deliberations, the foreperson confirmed the split had not changed, and the court discharged the jury. That action was premature and unsupported by legal necessity.

Once a case has been given over to the jury's consideration, courts have been repeatedly cautioned to refrain from inquiry or conduct that might invade the jury's province or improperly influence their deliberations. (Cf. *People v. Gainer* (1977) 19 Cal.3d 835, 842 [disapproving " 'dynamite charge' " that some jurors should reconsider their position in light of the majority view], disapproved on another ground in *People v. Valdez* (2012) 55 Cal.4th 82, 163.) However, when a foreperson or any juror alerts the court that the panel has unanimously resolved a count, the court must act, but with care. Such a report by any juror may merely reflect his or her impressions, gleaned from discussions. (See *Blueford, supra,* 566 U.S. at p. 606.) There is a reason we have statutes that formalize the receipt of a verdict, affirmation by the entire panel, and polling before the verdict is recorded. (See *Carbajal, supra,* 56 Cal.4th at pp. 530-531; §§ 1147, 1149, 1161, 1163, 1164, subd. (a).) Standardized instructions provide a framework for securing a formal response from the jury to facilitate receipt of partial verdicts. (See CALCRIM Nos. 640-643, 3517-3519.)

Courts should be mindful of section 1164, subdivision (b), which expressly requires that "[n]o jury shall be discharged

24

until the court has verified on the record that the jury has either reached a verdict or has formally declared its inability to reach a verdict on all issues before it, including, but not limited to, the degree of the crime or crimes charged . . . ." The court failed to do so here with respect to first degree murder.

Defendant may not be retried for first degree murder but may be retried on the lesser included offenses of second degree murder and voluntary manslaughter.[9] As *Stone* reasoned, an acquittal of a greater offense "does not bar a retrial for an offense necessarily included therein on which the jury is unable to agree, regardless of whether the lesser included offense is charged in a separate count." (*Stone, supra,* 31 Cal.3d at p. 522.) The jury's reported numerical split reflected it was deadlocked as to second degree murder and voluntary manslaughter. After two reports of a deadlock, the court instructed the jury to continue deliberating, but the jury remained at an impasse. The court acted well within its discretion by concluding no reasonable probability of agreement existed as to these counts. (See *Halvorsen, supra,* 42 Cal.4th at p. 426.)

---

[9] Contrary to the dissent's suggestion, our conclusion does not depend on a finding that the foreperson's comments regarding the jury's numerical split constituted "an implied verdict" that should be "given effect as such." (Dis. opn., *post,* at p. 12.) The foreperson's statements reflected the jury had come to a unanimous decision on first degree murder and, therefore, was *not* deadlocked on that charge, thus rendering the trial court's declaration of a mistrial premature and outside the normal rule allowing "retrial following discharge of a jury that has been unable to agree on a verdict." (*Fields, supra,* 13 Cal.4th at p. 300.)

## III.  DISPOSITION

The Court of Appeal's judgment is affirmed.


**CORRIGAN, J.**


**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**GROBAN, J.**

PEOPLE v. ARANDA

S214116


Dissenting Opinion by Justice Chin


I dissent. Because the first jury was unable to reach a verdict, I would hold that defendant may be retried for first degree murder.

## A. Introduction

In *Stone v. Superior Court* (1982) 31 Cal.3d 503 (*Stone*), a murder case, the jury was deadlocked. The foreperson described the state of the deliberations as being no votes for guilty of murder, some votes for guilty of voluntary manslaughter, some votes for guilty of involuntary manslaughter, and some votes for acquittal. This court held, over dissents from Justices Richardson and Kaus, that, under the circumstances, the trial court was required to take a partial verdict of not guilty of murder. It limited any retrial to manslaughter.

The *Stone* court believed the double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution compelled this conclusion. It relied heavily, although not exclusively, on United States Supreme Court decisions including, above all, *Green v. United States* (1957) 355 U.S. 184. (*Stone, supra*, 31 Cal.3d at pp. 515-518.) It did not indicate which constitution it believed compelled this conclusion, citing both constitutional provisions and state and federal decisions interchangeably. As the majority correctly notes, *Stone*'s "discussion of both federal

and state authorities largely assumed the two clauses were coextensive, at least as to this issue. (See *Stone*, at p. 516 [referencing 'the double jeopardy clause' without differentiation].)" (Maj. opn., *ante*, at p. 10.)

This case presents the question of whether *Stone*'s assumption that the two double jeopardy clauses are coextensive as to this issue was correct. In *Blueford v. Arkansas* (2012) 566 U.S. 599 (*Blueford*), also a murder case, the United States Supreme Court interpreted the federal double jeopardy clause differently than did the *Stone* court. *Blueford* involved circumstances comparable to what occurred in *Stone* and in this case. There, "[b]efore the jury concluded deliberations in this case, it reported that it was unanimous against guilt on charges of capital murder and first-degree murder, was deadlocked on manslaughter, and had not voted on negligent homicide." (*Blueford*, at p. 601.) Defense counsel asked the trial court to permit the jury to return a partial verdict of not guilty on the charges on which it had reached a verdict. The trial court declined to do so. "To allow for a partial verdict, the court explained, would be 'like changing horses in the middle of the stream,' given that the jury had already received instructions and verdict forms." (*Id.* at p. 604.) Contrary to what this court held in *Stone*, the high court held that the federal double jeopardy clause did *not* require the court to take a partial verdict of acquittal in those circumstances.

The *Blueford* court explained that it had "never required a trial court, before declaring a mistrial because of a hung jury, to consider any particular means of breaking the impasse — let alone to consider giving the jury new options for a verdict." (*Blueford*, *supra*, 566 U.S. at p. 609.) "The jury in this case did

not convict Blueford of any offense, but it did not acquit him of any either. When the jury was unable to return a verdict, the trial court properly declared a mistrial and discharged the jury. As a consequence, the Double Jeopardy Clause [of the United States Constitution] does not stand in the way of a second trial on the same offenses." (*Id.* at p. 610.)

The difference between *Blueford* and *Stone* squarely presents the question of whether the double jeopardy clauses of the two constitutions are coextensive in this regard, as *Stone* had assumed. If so, we should follow *Blueford*'s subsequent interpretation of the federal clause. But the majority does not do so. Instead, it rejects *Stone*'s assumption and interprets California's constitutional double jeopardy clause differently than the federal clause.

This case presents a close question, and the majority makes a credible argument. As it notes, we may interpret, and occasionally have interpreted, California's double jeopardy clause differently than the federal equivalent.

But I would not do so here. Contrary to the majority, I would conclude that (1) statements by the jury foreperson regarding the state of the deliberations at any given time do not constitute a formal jury verdict and should not be treated as one; and (2) just as, long after *Stone*, we prohibited partial verdicts of *conviction* (*People v. Fields* (1996) 13 Cal.4th 289; see *post*, pt. C.), we should follow the majority rule among the states and prohibit partial verdicts of *acquittal*. At the least, we should not *require* partial verdicts of acquittal.

## B. Background

The majority accurately recites the factual and procedural background. (Maj. opn., *ante*, at pp. 1-4.) Critical

3

to this issue, in reporting that the jury had reached a stalemate, the foreperson explained that the jury had " 'basically ruled out murder in the first degree,' " but it was hung on lesser included charges. (Maj. opn., *ante*, at p. 2; but cf. *id.* at p. 24 [truncating the quoted language to "the jury had 'ruled out' first degree murder"].) When defense counsel asked the trial court to permit the jury to return a partial verdict of not guilty of first degree murder, the court declined, stating that it did not " 'want to change horses in midstream.' " (Maj. opn., *ante*, at p. 3.) When it became clear the jury was deadlocked, the court declared a mistrial. (*Ibid.*)

## C. Discussion

We must decide between two conflicting views: (1) the view that what the jury foreperson says about the state of the deliberations should not be treated as a verdict, and the trial court should not take partial verdicts of acquittal (the view in *Blueford, supra*, 566 U.S. 599, the majority view among the states, and essentially the view taken in the dissents by Justices Richardson and Kaus in *Stone, supra*, 31 Cal.3d 503); and (2) the view that the trial court should treat the foreperson's description of the state of deliberations as the equivalent of a verdict and take a partial verdict of acquittal (the *Stone* view and the minority view among the states).

The majority is correct that *Blueford, supra*, 566 U.S. 599, is not binding on this court. This court *may* interpret California's own constitutional double jeopardy clause more favorably to criminal defendants than the double jeopardy clause under the United States Constitution. The question is whether we *should* do so in this instance.

Before I get to the constitutional question, I note that the majority relies in part on the circumstance that the *Stone* court found a statutory basis for its conclusion. (Maj. opn., *ante*, at pp. 6, 13-17.) *Stone* did, indeed, cite Penal Code provisions to bolster its conclusion. (*Stone, supra*, 31 Cal.3d at pp. 517-518.) But the court believed its holding was *constitutionally* compelled. It simply interpreted the Penal Code the way it did to bring it into compliance with this perceived constitutional compulsion. The court stated that it interpreted the statutes "[f]or *the purpose* of delineating the scope of the double jeopardy protection" (*Stone*, at p. 517, italics added) and reiterated its holding that "the trial court is *constitutionally* obligated to afford the jury an opportunity to render a partial verdict of acquittal on a greater offense when the jury is deadlocked only on an uncharged lesser included offense" (*id.* at p. 519, italics added).

The statutory rationale, by itself, is not persuasive. As the majority explains, the *Stone* court cited Penal Code section 954 (section 954) as supposedly permitting prosecutors to charge all lesser included offenses as separate counts, which would presumably permit a verdict — either conviction or acquittal — on any or all of those counts. Thus, *Stone* concluded, something similar must be permitted if the prosecutor chooses to charge all included offenses in a single count. The majority here describes this as a "fairness rationale." (Maj. opn., *ante*, at p. 14.)

The *Stone* court apparently envisaged a scenario in which the prosecution might charge a single homicide in four counts: first degree murder, second degree murder, voluntary manslaughter, and involuntary manslaughter. If so charged, the jury would have a smorgasbord of options: guilty or not

guilty of any or all of the counts. That scenario would permit a defendant to be convicted on all four counts, thus receiving four felony homicide-based convictions for the same homicide. It is a truly bizarre scenario. But it is artificial.

Section 954 permits, in specified circumstances, the *charging* of multiple crimes, including "different statements of the same offense," and *conviction* "of any number of the offenses charged." But, despite section 954's seemingly all-inclusive language, we have held that a defendant may *not* be convicted of both a greater and a lesser included offense. "In California, a single act or course of conduct by a defendant can lead to convictions 'of *any number* of the offenses charged.' (§ 954, italics added; [citation].) But a judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses." (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034; accord, *People v. Sanders* (2012) 55 Cal.4th 731, 736; *People v. Pearson* (1986) 42 Cal.3d 351, 355.)

Because section 954 refers both to charging and conviction, no reason exists to interpret the section artificially as prohibiting *conviction* of lesser included offenses but permitting *charging* of the same included offenses, and then to use that interpretation to conclude that partial verdicts of acquittal are constitutionally mandated. Charging a greater offense permits conviction of all lesser included offenses. (Pen. Code, § 1159; see maj. opn., *ante*, at p. 16.) Thus, in effect, charging the greater offense also charges all lesser included offenses. Our interpretation of section 954 should be consistent. The section simply does not govern lesser included offenses.

Moreover, after *Stone*, we implicitly abandoned this so-called fairness rationale. In *People v. Fields, supra,* 13 Cal.4th 289, we interpreted provisions of the Penal Code as *prohibiting* partial verdicts of conviction. For example, we made clear that if the jury unanimously agrees a defendant is guilty at least of second degree murder but is deadlocked on first degree murder, the court may not take a partial verdict of guilty of second degree murder; such a verdict would preclude retrial of the first degree murder charge, and thus not be a partial verdict. (*Fields*, at pp. 311-312.) A procedure permitting a partial verdict of guilt would work the same way a procedure permitting a partial verdict of acquittal is supposed to work. If the jury unanimously found the defendant was guilty of a lesser offense (for example, second degree murder), but was hopelessly deadlocked on the greater offense (for example, first degree murder), the trial court could take a verdict of guilty of second degree murder and declare a mistrial regarding first degree murder. At retrial, the jury would decide only whether the murder was of the first or second degree. This procedure would be exactly as clear (or murky) as partial verdicts of acquittal. No reason exists to require the one and prohibit the other. The same fairness rationale that, the *Stone* court held, mandated the taking of partial verdicts of acquittal should have mandated the taking of partial verdicts of conviction. But *Fields* concluded otherwise.

The majority also cites another statute, apparently in support of *Stone*'s rule, specifically, Penal Code section 1164, subdivision (b), which provides that "[n]o jury shall be discharged until the court has verified on the record that the jury has either reached a verdict or has formally declared its inability to reach a verdict *on all issues before it*, including, but

7

not limited to, the degree of the crime or crimes charged . . . ." (Italics added; see maj. opn., *ante*, at p. 20.) This statute does not support the *Stone* rule. The jury *did* indicate its inability to reach a verdict on all issues. It could not decide several issues, including whether defendant was guilty of anything and, if so, exactly what. Section 1164 neither permits nor requires partial verdicts of acquittal, just as it neither permits nor requires partial verdicts of conviction.

For these reasons, California's Penal Code does not supply the answer to the question presented here. I recognize that this circumstance does not mean we must abandon the *Stone* rule. As *Stone* itself said, "we remain free to delineate a higher level of protection under article I, section 15 . . . , of the California Constitution." (*Stone, supra*, 31 Cal.3d at p. 510.) But it does mean we have to decide the constitutional question, which *Stone* did not resolve. I now turn to that question.

The Fifth Amendment to the United States Constitution provides, as relevant, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." Article I, section 15 of California's Constitution provides, as relevant, "Persons may not twice be put in jeopardy for the same offense . . . ." "The double jeopardy clause in the federal Constitution, as we have noted, uses 'words very similar' to California's." (*People v. Statum* (2002) 28 Cal.4th 682, 693.) "We have long emphasized that there must be cogent reasons for a departure from a construction placed on a similar constitutional provision by the United States Supreme Court." (*East Bay Asian Local Development Corp. v. State of California* (2000) 24 Cal.4th 693, 719.) This requirement of " ' "cogent reasons" ' " applies to the specific question of whether we should interpret our state constitutional double jeopardy

clause differently than the similar federal constitutional clause. (*Statum*, at p. 693.)

No cogent reasons exist to depart from the United States Supreme Court's interpretation of the federal double jeopardy clause. Indeed, strong reasons exist not to do so. As I will explain, most opinions from other states that have considered this question, especially the more recent ones, are consistent with *Blueford.* We should join the mainstream and adopt the majority view.

First, I note that there was no history, or even hint, of anything like the *Stone* rule in California before *Stone* itself. Far from it. In *People v. Griffin* (1967) 66 Cal.2d 459 (*Griffin*), the defendant appealed a first degree murder conviction and death judgment following a third trial. "The jury at the second trial was discharged after failing to reach a unanimous verdict, and a mistrial was declared. [Citations.] After the jury was discharged, the foreman disclosed in open court that the jurors had stood 10 for acquittal and 2 for guilty of second degree murder." (*Id.* at p. 464.) The defendant argued that "this fact establishes an implied acquittal of first degree murder," and thus double jeopardy principles prohibited retrial. (*Ibid.*) This court, in an opinion by Chief Justice Traynor that was unanimous on this point, disagreed. It explained, "We may not infer from the foreman's statement that the jury had unanimously agreed to acquit of first degree murder. There is no reliable basis in fact for such an implication, for the jurors had not completed their deliberations and those voting for second degree murder may have been temporarily compromising in an effort to reach unanimity." (*Ibid.*) The opinion does not suggest that the trial court should have

permitted the jury at the second trial to return a partial verdict of acquittal.

In finding an implied acquittal under its facts, the *Stone* majority distinguished *Griffin* on dubious grounds that do not significantly confront *Griffin*'s actual reasoning. (*Stone, supra*, 31 Cal.3d at pp. 512-514.) Additionally, it found itself obligated to disapprove a Court of Appeal decision that was to the contrary. (*Id.* at pp. 518-519, fn. 8.) The dissenters in *Stone* cited *Griffin* in support of their contrary positions. (*Stone*, at pp. 523-524 (dis. opn. of Richardson, J.); *id.* at p. 525 (dis. opn. of Kaus, J.).) Indeed, as I discuss below, opinions in other states sometimes cite *Griffin* in support of the majority view.

Just as there was no previous history supporting independent state grounds in this regard, so is there nothing more recent supporting the *Stone* view. The majority cites more recent cases, but they merely restate what *Stone* held. They provide no additional support for its finding that the partial acquittal rule is constitutionally compelled. Indeed, we moved in the opposite direction when we prohibited partial verdicts of conviction in *People v. Fields, supra*, 13 Cal.4th 289.

The purposes behind the constitutional guarantee against double jeopardy provide little support for finding the foreperson's statements constituted an implied acquittal or the rule requiring taking a partial verdict of acquittal. The *Stone* court summarized those purposes: " '[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and

insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'" (*Stone, supra,* 31 Cal.3d at p. 515, quoting *Green v. United States, supra,* 355 U.S. at pp. 187-188; accord, *Blueford, supra,* 566 U.S. at p. 605.)

These purposes have some, but very little, application in this situation. Even under the majority's holding, defendant *can be retried,* albeit with second degree murder as the upper limit. He can be subjected to the embarrassment, expense, and ordeal of a second trial, although the embarrassment, expense, and ordeal might be slightly lessened by the knowledge that he could only be convicted of second degree murder. That leaves the concern that retrial of first degree murder will enhance the possibility that he will be found guilty of that offense even though he might be guilty only of second degree murder. But, given the uncertainty of what happened at the first trial, this purpose is also weak. Providing defendant a new and fair trial, with the burden of proof again placed on the prosecution to prove him guilty beyond a reasonable doubt, sufficiently guards against a wrongful conviction.

Most states that considered this question before *Blueford* rejected the *Stone* rule. As the most recent of the pre-*Blueford* cases summarizes, "Several other jurisdictions have addressed this issue, and the majority has held that if a single charge includes multiple degrees of offenses, the trial court may not conduct a partial verdict inquiry as to the offenses included within the charge. [Citing *State v. Bell* (Iowa 1982) 322 N.W.2d 93, 95, *State v. McKay* (Kan. 1975) 535 P.2d 945, 947, *People v. Hall* (Ill.Ct.App. 1975) 324 N.E.2d 50, 52-53, *Commonwealth v. Roth* (Mass. 2002) 776 N.E.2d 437, 450, *People v. Hickey* (Mich.App. 1981) 303 N.W.2d 19, 21, *State v.*

*Booker* (N.C. 1082) 293 S.E.2d 78, 80.] The minority, on the other hand, has held that double jeopardy requires a partial verdict of acquittal as to the greater offenses if the jury is deadlocked only as to the lesser offenses. [Citing *Stone, supra,* 31 Cal.3d 503, as well as *Whiteaker v. State* (Alaska Ct.App. 1991) 808 P.2d 270, 278, *State v. Tate* (Conn. 2001) 773 A.2d 308, 321, *State v. Pugliese* (N.H. 1980) 422 A.2d 1319, 1321.]" (*People v. Richardson* (Colo. 2008) 184 P.3d 755, 763, fn. omitted [adopting the majority rule], see *Booker*, at p. 80 [referring to the "better reasoned . . . majority rule which requires a *final verdict* before there can be an implied acquittal"].)

Of the three cases considering the question after *Blueford*, two have followed *Blueford* and the majority rule. (*Traylor v. State* (Tex.Crim.App., Nov. 7, 2018, No. PD-0969-17) 2018 WL 5810859; *State v. Alvarado* (Wis.Ct.App. 2017) 903 N.W.2d 122.) One has adopted independent state grounds. (*State v. Fennell* (Md. 2013) 66 A.3d 630.)

But I do not merely rely on the weight of authority. The majority rule is the better reasoned rule.

The foreperson's description of the state of deliberations should not be treated as an implied verdict and given effect as such. There was no formal verdict in accordance with California's statutory requirements. The majority acknowledges that "[t]here is a reason we have statutes that formalize the receipt of a verdict, affirmation by the entire panel, and polling before the verdict is recorded. [Citations.]" (Maj. opn., *ante*, at p. 24.) Here there was no such formality. " '[B]asically' " ruling something out, as the foreperson reported occurred here (maj. opn., *ante*, at p. 2), is very different from

12

rendering a formal verdict. As Justice Richardson argued in *Stone* (citing *Griffin, supra*, 66 Cal.2d 459), "we do not know whether the reported votes represented a 'temporary compromise' reached by any particular juror in an attempt to reach a unanimous verdict." (*Stone, supra*, 31 Cal.3d at p. 524 (dis. opn. of Richardson, J.).) The reported votes "were flash pictures taken of jury negotiations at particular moments in their deliberations." (*Ibid.*; see *id.* at p. 525 (dis. opn. of Kaus, J.) [similar].)

"The foreperson's report was not a final resolution of anything." (*Blueford, supra*, 566 U.S. at p. 606.) "[N]othing in the [court's] instructions prohibits the jury from doing what juries often do: revisit a prior vote. 'The very object of the jury system,' after all, 'is to secure unanimity by a comparison of views, and by arguments among the jurors themselves.' [Citation.] A single juror's change of mind is all it takes to require the jury to reconsider a greater offense." (*Id.* at p. 608.)

I agree with the Colorado Supreme Court that "a jury's deliberations should not be given the legal force of a final verdict until the end result is expressed on a verdict form returned in open court as required by Colorado law [as well as California law; see maj. opn., *ante*, at p. 24]. [Citations.] . . . In short, the jury's informal and non-final discussions and decisions concerning the first- and second-degree murder charges against Richardson are not reliable." (*People v. Richardson, supra*, 184 P.3d at p. 764.) Or, as the Massachusetts Supreme Judicial Court explained when it adopted the majority view, "until there is a final verdict on the entire charge, one cannot be certain whether jurors have been proffering 'compromise' votes in an attempt to reach a verdict. The most recent 'vote' immediately prior to reporting deadlock

may well be tentative, a failed experiment in compromise, not a true expression of each juror's assessment of the case. [Citations.] After the jury have reported that deadlock, a judge's request that the jury divulge the substance of their 'final' vote may force the jury to report as 'final' some votes that were not intended to be 'final' unless they resolved the entire case." (*Commonwealth v. Roth, supra*, 776 N.E.2d at pp. 448-449, fn. omitted.)

Significantly, some of the cases adopting the majority view have cited our opinion in *Griffin, supra*, 66 Cal.2d 459, to support that view. (*State v. Bell, supra*, 322 N.W.2d at pp. 95-96 [attempting to distinguish *Stone* but adding, "to the extent *Stone* may be inconsistent with *Griffin*, we believe *Griffin* expresses the better view"]; *People v. Hickey, supra*, 303 N.W.2d at p. 21; *State v. Booker, supra*, 293 S.E.2d at pp. 80-81.)

I also see no cogent reason to adopt on independent state grounds a rule requiring the jury to return a partial verdict of acquittal in these circumstances. The trial court in both this case and *Blueford* were correctly reluctant to "change horses in midstream" (this case) or to "chang[e] horses in the middle of the stream" (*Blueford, supra*, 566 U.S. at p. 604).

The Massachusetts Supreme Judicial Court has firmly held that a trial court should not take partial verdicts from a deadlocked jury. In *Commonwealth v. Roth, supra*, 776 N.W.2d 437, the trial judge took partial verdicts on lesser included offenses. The state high court held the judge erred. "[A] judge's inquiry concerning possible partial verdicts improperly intrudes on the jury's function, and we remain of the view that the ostensible benefits to be gained by such a

14

procedure are outweighed by its risks." (*Id.* at p. 446.) "Inquiry concerning partial verdicts on lesser included offenses, no matter how carefully phrased and delivered, carries a significant potential for coercion. We have previously recognized that deadlocked juries are particularly susceptible to coercion. [Citations.] . . . Where the jurors have twice reported themselves deadlocked, and have already heard [a charge urging the jury to continue deliberating], a judge's inquiry concerning partial verdicts cannot avoid communicating to the jury the judge's desire to salvage *something* from the trial. However the inquiry is articulated or explained, the import of the inquiry is unmistakable: 'Can't you at least decide a part of the case?' The inquiry, by its nature, plays on the deadlocked jurors' natural sense of frustration, disappointment, and failure. The jurors are confronted with the request, and asked to absorb its inherent complexity, at the worst possible time, when they are tired, anxious to be discharged, and perhaps angry at fellow jurors whom they blame for failing to reach agreement. While technically inquiring only as to what the jurors have already agreed on, the request for partial verdicts broken down by lesser included offenses implicitly suggests that the jurors should try just a little bit harder to come back with at least a partial decision to show for all of their efforts." (*Id.* at pp. 447-448.)

The *Roth* court found "too great a risk that such a verdict would merely be the product of one hasty, final attempt to satisfy the judge's apparent desire for some form of decision on the case." (*Commonwealth v. Roth, supra,* 776 N.E.2d at p. 448.) "Such inquiries of the jury may succeed in extracting a partial verdict, but we could not have confidence that that

partial verdict was the product of a thoughtful and thorough deliberation process." (*Id*. at p. 449.) Accordingly, the court "conclude[d] that judges should not initiate any inquiry into partial verdicts premised on lesser included offenses within a single complaint or count of an indictment. In our view, the risks of juror coercion are too high, and the reliability of any such partial verdict returned is too low, to warrant such an approach to salvaging some partial result from a deadlocked jury. We remain of the view that such inquiries 'constitute an unwarranted and unwise intrusion into the province of the jury.'" (*Id*. at p. 450.)

The Colorado Supreme Court quoted at length from, and agreed with, the *Roth* decision in a case in which the jury unanimously agreed the defendant was not guilty of murder but was deadlocked on the lesser included offenses of manslaughter and criminally negligent homicide. It found "the *Roth* court's reasoning — including its concerns about juror coercion and compromise — persuasive." (*People v. Richardson*, *supra*, 184 P.3d at p. 763.) I do too.

Indeed, the coercive effect identified in *Roth* and *Richardson* is even greater under California law as it now stands. After *Stone*, we prohibited partial verdicts of conviction. (*People v. Fields*, *supra*, 13 Cal.4th 289.) I see no compelling, or even cogent, reason for prohibiting partial verdicts of guilt while requiring, in some circumstances, partial verdicts of acquittal. Under the majority holding, the coercive effect can only go one way — towards a not guilty verdict. The coercive message a deadlocked jury will receive in these circumstances is that the court really wants to salvage *something* from the trial, and that something can only be an acquittal, not a conviction.

We should not interpret our state constitutional double jeopardy clause differently than the similarly worded federal counterpart to compel this coercive message. The first jury resolved nothing. Providing defendant with a new, unrestricted, jury trial, once again placing the burden of proof on the prosecution beyond a reasonable doubt, sufficiently protects defendant's constitutional rights.

The majority invokes what it calls a "fairness rationale" for the *Stone* rule it embraces. (Maj. opn., *ante*, at p. 14.) I would invoke a different fairness rationale. The rule should be consistent. Just as the trial court cannot take a partial verdict of guilt, so too it should not take a partial verdict of acquittal.

For these reasons, I would find a legal necessity existed for discharging the first jury. (Maj. opn., *ante*, at pp. 5-6.) Defendant should be retried without restriction.

**CHIN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Aranda

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 219 Cal.App.4th 764
**Rehearing Granted**

_____

**Opinion No.** S214116
**Date Filed:** April 4, 2019

_____

**Court:** Superior
**County:** Riverside
**Judge:** Michele D. Levine and Helios (Joe) Hernandez

_____

**Counsel:**

Paul E. Zellerbach, District Attorney, Jeff Van Wagenen, Assistant District Attorney, Elaina Gambera Bentley and Kelli M. Catlett, Deputy District Attorneys, for Plaintiff and Appellant.

Mitchell Keiter as Amicus Curiae on behalf of Plaintiff and Appellant.

Blumenthal Law Offices, Virginia M. Blumenthal and Brent F. Romney for Defendant and Respondent.

Ronald L. Brown, Public Defender (Los Angeles), Albert J. Menaster and Mark Harvis, Deputy Public Defenders, as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kelli M. Catlett
Deputy District Attorney
3960 Orange Street
Riverside, CA  92501
(951) 955-5400

Virginia M. Blumenthal
Blumenthal Law Offices
3993 Market Street
Riverside, CA  92501
(951) 682-5110