Filed 9/23/21  P. v. Maldonado CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>LARENZO RICARDO MALDONADO,<br><br>　　Defendant and Appellant. | B308300<br><br>(Los Angeles County Super. Ct. No. A364611) |

　　APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

　　Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

　　Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda Lopez and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

In 1981, Larenzo Ricardo Maldonado pleaded guilty to second degree murder based on a codefendant's fatal shooting of a pizza delivery man during the commission of an armed robbery. In 2019, Maldonado filed a petition for resentencing pursuant to newly-enacted Penal Code section 1170.95.[1] The trial court denied the petition based on a finding that Maldonado was not entitled to relief under section 1170.95 because he was a major participant in the robbery and acted with reckless indifference to human life. On appeal, Maldonado argues the trial court erred in denying the petition because principles of double jeopardy precluded a finding that he could be convicted of first degree felony murder under current law. Maldonado also asserts the evidence was insufficient to support the trial court's factual finding that he was not entitled to resentencing. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     The 1980 robbery and murder[2]

On October 10, 1980, seven juvenile members of the Avenues gang, including Maldonado, decided to rob a pizza delivery man to obtain money to go to a county fair. The plan

---

[1] Unless otherwise stated, all further statutory references are to the Penal Code.

[2] The description of the robbery and murder set forth in this opinion is based on a January 1981 probation report, an October 1980 police report, and a November 1980 transcript of the prosecuting attorney's interview with Lisa Gandara, one of the co-participants in the crimes. These records were attached as exhibits to the People's response to Maldonado's section 1170.95 petition, and were considered by the trial court in ruling on the petition.

2

initially was devised by Rudy Zamorano, Martha McRae, and Lisa Gandara. They then gathered with Maldonado, Manual Marin, Ralph Garcia, and Pete Herrera at Maldonado's house where they worked out the details of the plan. All seven individuals "were for it." The plan was to drive to a secluded street, order pizzas for delivery to an address on that street, and then wait for the delivery man to arrive to rob him. While the group agreed that "nobody was supposed to get hurt," they also decided to use a gun in the robbery "in case the pizza man decided to pull a gun" on them. Zamorano told the group that if the delivery man pulled out a gun or tried to defend himself, "they were going to shoot him."

The group drove in Marin's car to a fellow gang member's house where Zamorano retrieved a rifle and ammunition. They then chose a house on Raber Street as the location for the robbery because it was the darkest street in the area. After dropping off McRae and Herrera at a pay phone booth so that they could order the pizzas, the group parked the car down the street from the Raber Street house. While Marin stayed in the car, the rest of the group waited near the house for the delivery man. Maldonado and Gandara stood in front of the house while Zamorano and Garcia hid behind a car across the street.

When the delivery man, Phillip Ares, arrived on Raber Street, Gandara directed him to follow her to the house. As Ares was walking toward the house, Zamorano approached him from behind, placed the rifle against his back, and said, "Hold it, motherfucker, or I'll shoot you." Gandara grabbed the pizzas from Ares's hands. Maldonado and Garcia then searched Ares for money. Maldonado removed change from one of Ares's pockets while Garcia took bills from another pocket.

3

After the men took Ares's money, Zamorano directed him to turn around. When Ares did not comply, Zamorano warned him, "If you don't turn around, I'll shoot you through the back." Ares again did not comply, and instead stood silently with his back to Zamorano. After Zamorano told Ares to turn around a third time, Maldonado grabbed Ares by his arm and turned him toward Zamorano. At that point, the rifle was pointed at Ares's stomach. Zamorano told Ares, "I know you're going to snitch." Zamorano then walked around Ares and shot him three times in the back. Ares died at the scene from his gunshot wounds.

Immediately after the shooting, Maldonado and the rest of the group ran back to Marin's car. When Gandara asked Zamorano why he shot the delivery man, Zamorano "[j]ust laughed." According to Gandara, "we all laughed, just laughed," and "we didn't expect that he died." After the group picked up McRae and Herrera, they drove to an alley, where they hid the rifle and split the proceeds from the robbery. The group then parked on a nearby street and ate the pizza.

## II.    Maldonado's 1981 guilty plea

Maldonado, Zamorano, and Marin were each charged with murder and robbery with robbery-murder special circumstance and firearm enhancement allegations. On January 7, 1981, Maldonado pleaded guilty to second degree murder pursuant to a plea agreement. He was sentenced to a term of 15 years to life in state prison.

## III.    Maldonado's 2019 petition for resentencing

On January 2, 2019, Maldonado filed a petition for resentencing pursuant to section 1170.95. He asserted he was entitled to relief under the statute because he pleaded guilty to

4

murder pursuant to the felony-murder rule or natural and probable consequences doctrine, he was not the actual killer, he did not aid or abet a murder with the intent to kill, and he was not a major participant in the underlying felony or acted with reckless indifference to human life. On March 11, 2019, the trial court appointed counsel to represent Maldonado in his section 1170.95 petition.

On July 2, 2019, the People filed a response to Maldonado's petition. The People contended the petition should be denied because section 1170.95 was unconstitutional. The People also argued Maldonado was ineligible for resentencing because he was a major participant in the robbery and acted with reckless indifference to human life. On November 12, 2019, the trial court issued an order to show cause, finding that section 1170.95 was constitutional, and that Maldonado had made a prima facie showing of entitlement to relief.

On September 14, 2020, following a hearing on the order to show cause, the trial court denied Maldonado's petition. In a detailed memorandum of decision, the trial court found that Maldonado was not entitled to relief under section 1170.95 because the evidence showed, beyond a reasonable doubt, that Maldonado was a major participant in the underlying felony and acted with reckless indifference to human life. In finding that Maldonado was a major participant in the felony, the court relied on "his later, but actual, participation in the planning, his participation in the robbery, his lack of action when it became apparent his co-perpetrator believed the victim needed to be killed, and his lack of aid to the victim." In finding that Maldonado had acted with reckless indifference to human life, the court cited "his role as a late-stage planner and a participant

5

in the armed robbery who was in a position to prevent the violence but did not."[3]

Following the denial of his petition, Maldonado filed a timely appeal.

## DISCUSSION

### I.     Overview of section 1170.95

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) amended murder liability under the felony murder rule and natural and probable consequences doctrine.  (*People v. Lewis* (2021) 11 Cal.5th 952, 957; *People v. Gentile* (2020) 10 Cal.5th 830, 842–843.)  Prior to Senate Bill 1437's enactment, under the felony murder rule, "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state."  (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248.)  Similarly, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense."  (*Id*. at p. 248.)

Senate Bill 1437 amended the felony murder rule by adding section 189, subdivision (e), which provides that a participant in

---

[3] At the hearing on the order to show cause, Maldonado was represented by counsel, but he did not appear in court, did not present any live or written testimony, and did not offer any additional documentary evidence in support of his petition.

6

the perpetration or attempted perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor in the murder; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (See *People v. Gentile*, *supra*, 10 Cal.5th at p. 842.) It amended the natural and probable consequences doctrine by adding section 188, subdivision (a)(3), which states that malice shall not be imputed to a person based solely on his or her participation in a crime. (*Id.* at p. 843.)

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony murder or natural and probable consequences theory may petition the sentencing court to vacate the murder conviction and resentence the petitioner on any remaining counts. (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 959; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.) A petitioner is eligible for relief if he or she: (1) was charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine, (2) was convicted of first or second degree murder, and (3) could no longer be convicted of first or second degree murder due to the changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1170.95, subd. (a).)

Once a petitioner makes a prima facie showing that he or she is entitled to relief, the sentencing court must issue an order to show cause (§ 1170.95, subd. (c)), and hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner (§ 1170.95, subds. (d)(1)). At that

7

hearing, the prosecution has the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing (§ 1170.95, subd. (d)(3))—that is, the People must prove beyond a reasonable doubt that the petitioner is guilty under a theory that remains valid after Senate Bill 1437's enactment.  (See *People v. Clements* (2021) 60 Cal.App.5th 597, 615, review granted Apr. 28, 2021, S267624; *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 230, review granted Mar. 10, 2021, S266652; *People v. Lopez* (2020) 56 Cal.App.5th 936, 949, review granted Feb. 10, 2021, S265974.)  Both the prosecution and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.  (§ 1170.95, subd. (d)(3).)  If the prosecution fails to sustain its burden of proof, the court must vacate the murder conviction and any allegations and enhancements attached to it, and resentence the petitioner on the remaining counts.  (§ 1170.95, subd. (d)(3).)

On appeal from an order denying a section 1170.95 petition following an evidentiary hearing, we review the superior court's factual findings for substantial evidence.  (*People v. Clements*, *supra*, 60 Cal.App.5th at p. 618; *People v. Rodriguez*, *supra*, 58 Cal.App.5th at p. 238.)  "We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' "  (*Clements*, at p. 618.)

## II.   Double jeopardy principles do not apply to Maldonado's section 1170.95 proceeding

On appeal, Maldonado first argues that the constitutional prohibitions against double jeopardy precluded the trial court

8

from finding that he could be convicted of first degree felony murder under current law because Maldonado previously was convicted of second degree murder. Maldonado further asserts that, to the extent he may have forfeited this claim on appeal, his counsel in the section 1170.95 proceeding was ineffective by failing to object on double jeopardy grounds in the trial court. We conclude Maldonado's claim lacks merit.

The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution provide that no person may be tried more than once for the same offense. (*People v. Aranda* (2019) 6 Cal.5th 1077, 1083.) The double jeopardy clause accordingly " 'protects against a second prosecution for the same offense following an acquittal or conviction, and also protects against multiple punishment for the same offense.' " (*People v. Anderson* (2009) 47 Cal.4th 92, 103–104.) A defendant must affirmatively raise a claim of double jeopardy in the trial court to preserve the issue for appeal. (*People v. Gurule* (2002) 28 Cal.4th 557, 646.)

Contrary to Maldonado's argument, the constitutional protections afforded by the double jeopardy clause do not apply to a section 1170.95 proceeding. As our colleagues in Division Seven explained in *People v. Hernandez* (2021) 60 Cal.App.5th 94, 111, an "evidentiary hearing under section 1170.95 . . . does not implicate double jeopardy because section 1170.95 'involves a resentencing procedure, not a new prosecution.' [Citation.] The retroactive relief provided by section 1170.95 is a legislative 'act of lenity' intended to give defendants serving otherwise final sentences the benefit of ameliorative changes to applicable criminal laws and does not result in a new trial or increased punishment that could implicate the double jeopardy clause.

[Citations.]  And even if a section 1170.95 evidentiary hearing were akin to a 'reprosecution' [citation] for purposes of the double jeopardy clause, prohibitions against double jeopardy do not prevent a retrial where 'a conviction is not reversed on appeal for insufficient evidence but because of a retroactive change in the law [such as section 1170.95].' "  (See *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1115–1116, review granted on another ground Nov. 13, 2019, S258175 [double jeopardy inapplicable to section 1170.95 resentencing procedure].)

Accordingly, double jeopardy principles did not preclude the trial court from finding that Maldonado was ineligible for resentencing because he could be convicted of first degree murder under a valid felony murder theory.  Because Maldonado's section 1170.95 proceeding did not implicate the double jeopardy clause, his counsel was not ineffective in failing to object on such grounds before the trial court.  (See *People v. Bell* (2019) 7 Cal.5th 70, 127 [counsel not ineffective in failing to raise futile objections]; *People v. Maury* (2003) 30 Cal.4th 342, 419 [same].)

## III.  Substantial evidence supported the trial court's finding that Maldonado was not entitled to section 1170.95 relief

Maldonado also challenges the sufficiency of the evidence supporting the trial court's finding that he was not entitled to relief under section 1170.95 because he could be convicted of first degree felony murder under current law.  Maldonado does not dispute that there was sufficient evidence to support the trial court's finding that he was a major participant in the robbery.  Rather, he contends the evidence was insufficient to support its finding that he acted with reckless indifference to human life.  For the reasons set forth below, we conclude that substantial

10

evidence supported the trial court's finding that Maldonado acted with reckless indifference to human life, and thus, that he could be convicted of first degree murder under a felony murder theory.[4]

## A. *Relevant law*

Section 189, subdivision (e)(3), provides that a participant in certain felonies, including robbery, in which a death occurs is liable for murder if the person was "a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2," the felony-murder special circumstance statute. Section 190.2, subdivision (d), in turn states that "every person, not the actual killer, who, with reckless indifference to human life and as a major participant" aids or abets an enumerated felony, including robbery, that results in death may be convicted of special circumstance murder and sentenced to death or imprisonment for life without parole. "The statute, by its text, imposes an actus reus requirement, major participation in the enumerated felony, and a mens rea requirement, reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 674.)

---

[4] Maldonado also argues he could no longer be convicted of second degree murder under current law because there was insufficient evidence that he acted with actual malice. In light of our conclusion that the evidence was sufficient to support the trial court's finding that Maldonado was ineligible for relief because he could be convicted of first degree felony murder, we need not consider whether Maldonado was also ineligible because he could be convicted of second degree malice murder.

11

More than 30 years after Maldonado's conviction, the California Supreme Court in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 clarified the meaning of the "major participant" and "reckless indifference" requirements of section 190.2, subdivision (d).  In *Banks*, the Supreme Court identified a nonexclusive list of factors for determining whether an aider and abettor was a major participant in the underlying felony:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted.)  With respect to the reckless indifference element, the court explained that "[r]eckless indifference to human life 'requires the defendant be *subjectively* aware that his or her participation in the felony involved a grave risk of death.' ' " (*Id*. at p. 807.)  "Awareness of no more than the foreseeable risk of death inherent in any armed crime is insufficient; only knowingly creating a 'grave risk of death' satisfies" the mens rea requirement.  (*Id*. at p. 808.)

Applying these principles, *People v. Banks*, *supra*, 61 Cal.4th at pages 805 to 807 held the evidence was insufficient to establish the defendant, a getaway driver in an armed robbery that resulted in a fatal shooting, was a major participant in the robbery or acted with reckless indifference to human life.  The

12

defendant did not qualify as a major participant because there was no evidence that he planned the robbery, had any role in procuring weapons, knew whether his confederates had committed prior violent crimes, was present at the scene of the crime, or could have prevented the shooting from occurring.  (*Id*. at p. 805.)  The defendant's awareness of the risk of death inherent in an armed robbery was insufficient to show reckless indifference because there was no evidence that he "knew his own actions would involve a grave risk of death."  (*Id*. at p. 807.)

The following year, in *People v. Clark, supra*, 63 Cal.4th at pages 616 to 618, the Supreme Court further elaborated on the mental state required to demonstrate reckless indifference to human life.  As the court explained, the reckless indifference element of a felony-murder special circumstance finding "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions."  (*Id*. at p. 617.)  The requisite state of mind is " 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' "  (*Id*. at p. 616.)  Reckless indifference to human life thus has both a subjective and objective component.  (*Id*. at p. 617.)  Subjectively, the defendant must consciously disregard risks known to him or her.  (*Ibid*.)  Objectively, recklessness is determined by "what 'a law-abiding person would observe in the actor's situation,' " that is, whether the defendant's conduct " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' " (*Ibid*.)  The fact that a robbery involved a gun, by itself, is insufficient to support a finding of reckless indifference to human life.  (*Id*. at p. 617.)

*People v. Clark*, *supra*, 63 Cal.4th 522 also provided a nonexclusive list of factors to consider in evaluating whether a defendant acted with reckless indifference to human life: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*In re Scoggins*, *supra*, 9 Cal.5th at p. 677 [listing factors set forth in *Clark*, at pp. 618–623].) Like the *Banks* factors, " '[n]o one of these considerations is necessary, nor is any one of them necessarily sufficient.' " (*Clark*, at p. 618.)

Applying these factors, *People v. Clark*, *supra*, 63 Cal.4th at pages 612 and 614 held there was insufficient evidence to support a finding that the defendant, the "mastermind" who planned and organized a store robbery that ended in a fatal shooting, acted with reckless indifference to human life. Despite the defendant's significant involvement in planning the crime, the evidence showed he attempted to minimize the likelihood of violence by timing the robbery to occur after the store was closed and planning the use of one unloaded gun. (*Id*. at pp. 621–622.) At the time of the shooting, the defendant was not present in the store, was unaware that the shooter had loaded the gun with a single bullet, and had no prior knowledge that the shooter was likely to engage in violence. (*Id*. at pp. 619–621.) The court thus concluded that there was "nothing in the plan that one can point

14

to that elevated the risk to human life beyond those risks inherent in any armed robbery." (*Id*. at p. 623.)

More recently, our Supreme Court considered the reckless indifference element of section 190.2, subdivision (d) in *In re Scoggins*, *supra*, 9 Cal.5th 667. The *Scoggins* court held the evidence was insufficient to establish that the defendant acted with reckless indifference to human life where he planned an unarmed assault and robbery and one of his accomplices deviated from the plan and killed the victim. (*Id*. at p. 676.) The victim previously had swindled the defendant in a sales transaction, and to exact revenge, the defendant recruited two friends to ambush the victim, " 'beat the shit' " out of him, and retrieve the defendant's money. (*Id*. at p. 671.) As planned, the attack took place in a strip mall parking lot while the defendant waited at a nearby gas station. When the victim arrived, however, one of the defendant's accomplices unexpectedly pulled out a gun and shot him. (*Id*. at pp. 671–672.) The defendant had no knowledge a gun would be used in the attack or that his accomplices were likely to engage in lethal force, was not present at the scene of the shooting or in a position to restrain the shooter, and had attempted to minimize the risk of death by planning for the assault to occur in a public place in broad daylight. (*Id*. at pp. 677–678, 681–683.) Based on these facts, the court concluded the defendant "did not 'knowingly creat[e] a "grave risk of death." ' " (*Id*. at p. 683.)

### B. *Substantial evidence supported the trial court's finding that Maldonado acted with reckless indifference to human life*

In challenging the trial court's finding that he acted with reckless indifference to human life, Maldonado argues that the

15

evidence merely reflected a plan to commit a garden-variety armed robbery of a pizza delivery man in which no one was supposed to be injured or killed. Maldonado further asserts that he had no prior knowledge that any of his cohorts were likely to engage in violence, and that he had no opportunity to intervene because the shooting occurred impulsively after he had already walked away. Maldonado thus contends that there was nothing about his own actions in planning or carrying out the robbery that contributed to a heightened risk of death. We disagree. Based on the totality of the evidence before the trial court, its finding that Maldonado acted with reckless indifference to human life was supported by substantial evidence.

The evidence showed that Maldonado participated in the planning of an armed robbery during which the potential for deadly force was expressly contemplated. While Maldonado did not conceive of the idea to rob a pizza delivery man, he was present when the details of the plan were formulated and the roles in the robbery were assigned. As described by Gandara, all seven members of the group, including Maldonado, were in favor of the plan, and further agreed that a rifle should be used. Although Zamorano at one point said that no one was supposed to get hurt, he also told the group that, if the pizza delivery man "pulls out a gun or he tries to . . . defend himself, they were going to shoot him."

The evidence further demonstrated that Maldonado was physically present at the robbery during the entire sequence of events that resulted in the victim's death. After lying in wait for the victim on a secluded street, Maldonado actively participated in the robbery by searching the victim's pockets and taking his money while Zamorano held him at gunpoint. When the victim

refused to comply with Zamorano's repeated demands to turn around, Maldonado grabbed the victim by his arm and turned him so that he was directly facing Zamorano. Maldonado was also present when Zamorano walked around the victim, told the victim that he knew he was "going to snitch," and then shot the victim three times in the back. While Maldonado contends that he had already walked away from the scene when Zamorano fired the shots, the record does not support his claim. Rather, Gandara recounted that both Maldonado and Garcia "were standing there" as Zamorano shot the victim, and the victim fell to the ground.

As the Supreme Court observed in *People v. Clark*, *supra*, 63 Cal.4th at page 619, "[p]roximity to the murder and the events leading up to it may be particularly significant where . . . the murder is a culmination or a foreseeable result of several intermediate steps, or where the participant who personally commits the murder exhibits behavior tending to suggest a willingness to use lethal force. In such cases, 'the defendant's presence allows him to observe his cohorts so that it is fair to conclude that he shared in their actions and mental state. . . . [Moreover,] the defendant's presence gives him an opportunity to act as a restraining influence on murderous cohorts. If the defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders.' "

In this case, Maldonado's presence at the scene gave him an opportunity to observe Zamorano's escalating violence and to intervene by either restraining Zamorano or rendering aid to the victim. Maldonado did neither. When Zamorano threatened to shoot the victim in the back if he did not turn around and face him, Maldonado did not try to calm Zamorano down or dissuade

17

him from carrying out his threat. Instead, Maldonado forced the victim to turn around. While Maldonado asserts that he was trying to minimize the risk of violence by making the victim comply with Zamorano's demand, a rational factfinder could conclude otherwise. Given the sequence of events, it reasonably could be inferred that Maldonado placed the victim at greater risk of harm by turning him around because it forced the victim to come face to face with the perpetrator holding the firearm, and increased the likelihood that the victim could identify him. Indeed, once the victim was facing Zamorano with the rifle pointed at his stomach, Zamorano appeared to become more agitated because he believed the victim was "going to snitch." Maldonado again did nothing to intervene, and instead stood by as Zamorano continued to act in a menacing manner toward the victim before shooting him in the back.

Maldonado's conduct after the shooting further supported a finding that he consciously disregarded the grave risk of death that resulted from his actions. Although he was present at the scene when Zamorano shot the victim, Maldonado did not call for assistance or attempt to render aid. Instead, Maldonado fled with his companions in the getaway car. Maldonado argues that he reasonably could have believed there was nothing he could do to help given that the victim had been shot three times at close range. According to Gandara, however, "[n]obody thought [the victim] was dead." Moreover, there was no evidence that Maldonado expressed any concern for the victim's welfare after the shooting. To the contrary, the evidence showed that everyone in the group laughed about the shooting as they fled the scene, and that they spent the next few hours splitting the proceeds of the robbery and eating the pizza that they had taken from the

victim. As described by Gandara, "[a]ll of us were in the car, and we all knew what happened. And we were eating the pizzas, and we were all laughing about it."

From this evidence, the trial court reasonably could find that Maldonado exhibited a reckless indifference to human life. The cases on which Maldonado relies in challenging the reckless indifference finding are readily distinguishable. In each of those cases, the defendant was not present at the scene of the killing or in a position to act as a restraining influence. (See, e.g., *In re Taylor* (2019) 34 Cal.App.5th 543, 559 [although defendant "was parked on the street near where the killing occurred, he never got out of the car and had no opportunity to prevent the shooting"]; *In re Ramirez* (2019) 32 Cal.App.5th 384, 404, 405 [defendant "was not at the immediate location of the killing," and was not "close enough to exercise a restraining effect on the crime or his colleagues"]; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1024 [where defendant was across the street from the shooting, he "was never in close enough proximity to act as a restraining influence"]; *In re Miller* (2017) 14 Cal.App.5th 960, 975 [defendant was "absent from the scene of the killing, and therefore had no opportunity to stop it or to help" the victim].)

In contrast, Maldonado was present at the scene and in close proximity to Zamorano as the events leading to the victim's death unfolded, which allowed him to observe how the risk of violence was escalating. Maldonado also had an opportunity to intervene as Zamorano considered whether to kill the victim, but he never made any attempt to stop the shooting or to assist the victim. In that critical respect, Maldonado is more akin to the defendants whose failure to act as a restraining influence on their cohorts supported a finding of reckless indifference to

19

human life.  (See, e.g., *In re Parrish* (2020) 58 Cal.App.5th 539, 544 [although defendant "had the opportunity . . . to restrain [his] murderous partners and to help the victim," he "did not take these opportunities"]; *In re McDowell* (2020) 55 Cal.App.5th 999, 1014 ["there was a brief but critical opportunity for [defendant] to say or do something to deescalate the situation," but instead "he remained silent"]; *People v. Law* (2020) 48 Cal.App.5th 811, 825, review granted July 8, 2020, S262490 [where defendant was "at the scene of the shooting, he could have tried to stop his accomplice's violent behavior or to help the victim once he had been shot, but he did neither"]; *In re Loza* (2017) 10 Cal.App.5th 38, 54 [defendant "neither intervened to dissuade [his cohort] from shooting either [victim] nor came to either [victim]'s aid after the shooting"].)

Considering the totality of the record in this case, the evidence was sufficient to support the trial court's finding that Maldonado was a major participant in the robbery and acted with reckless indifference to human life.  Because Maldonado was not entitled to relief under section 1170.95, the trial court did not err in denying his petition.

## DISPOSITION

The order denying Larenzo Ricardo Maldonado's Penal Code section 1170.95 petition is affirmed.
NOT TO BE PUBLISHED.


                                        HILL, J.*


We concur:



        EDMON, P. J.



        EGERTON, J.

---

* Judge of the Superior Court of Santa Barbara County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.