Filed 6/28/22 P. v. Maldonado CA2/3
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LORENZO RICARDO MALDONADO,<br><br>Defendant and Appellant. | B308300<br><br>Los Angeles County<br>Super. Ct. No. A364611 |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge. Affirmed.

Mark D. Lenenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amada V. Lopez and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.

In 1981, Lorenzo Ricardo Maldonado pleaded guilty to second degree murder based on a codefendant's fatal shooting of a pizza delivery man during the commission of an armed robbery. In 2019, Maldonado filed a petition for resentencing under Penal Code section 1170.95.[1] After an evidentiary hearing, the superior court denied the petition, finding Maldonado was not entitled to relief because he was a major participant in the robbery and acted with reckless indifference to human life. Maldonado appealed.

We originally issued an opinion in this case on September 23, 2021. We affirmed the order denying Maldonado's petition, rejecting Maldonado's contention that the double jeopardy clause applies to section 1170.95 proceedings and holding that substantial evidence supported the superior court's findings. After our affirmance, the governor signed into law the amendments to section 1170.95 enacted by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775), effective January 1, 2022. Maldonado filed a petition for review based on the newly-enacted amendments. On December 1, 2021, the California Supreme Court granted review and transferred the case to us with directions to vacate our decision and reconsider the cause in light of Senate Bill 775.

In addition to his previous contentions, Maldonado now also asserts he is entitled to a new hearing because (he says) the evidence on which the superior court relied in denying his petition is inadmissible under the amendments to section 1170.95, subdivision (d)(3). We conclude Maldonado has forfeited these evidentiary challenges. Not only did he fail to raise any

---

[1] References to statutes are to the Penal Code.

objections to the evidence in the superior court; he himself presented to the court the materials to which he now objects, asking the court to read and rely on them in ruling on his petition. In addition, we again conclude substantial evidence supports the trial court's findings that Maldonado was a major participant in the robbery and acted with reckless indifference to human life. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

1. ***The 1980 robbery and murder***[2]

On October 10, 1980, seven juvenile members of the Avenues gang, including Maldonado,[3] decided to rob a pizza delivery man to get money to go to a county fair. The plan initially was devised by Rudy Zamorano, Martha McRae, and Lisa Gandara. They then gathered with Maldonado, Manual Marin, Ralph Garcia, and "Pete" at Maldonado's house where they worked out the details. All seven participants "were for it." The plan was to drive to a secluded street, order pizzas for delivery to an address on that street, and then wait for the delivery man to arrive to rob him. While the group agreed "nobody was supposed to get hurt," they also decided to use

---

[2]     We take the facts from two documents Maldonado attached as Exhibits 1 and 2, respectively, to his reply brief in the superior court and incorporated by reference: a January 1981 probation officer's report and a transcript of a November 1980 interview by authorities of Lisa Rose Gandara, one of the co-participants in the crimes. The prosecution also attached these two documents—as well as an October 1980 police report—to its response to Maldonado's petition. We do not consider or rely on the police report.

[3]     Maldonado was 17 at the time of the crimes.

a gun in the robbery.  Zamorano told the group that, if the delivery man pulled out a gun or tried to defend himself, "they were going to shoot him."

The group drove in Marin's car to a fellow gang member's house where Zamorano retrieved a rifle and ammunition.  They then chose a house on Raber Street as the location for the robbery because it was the darkest street in the area.  After dropping off McRae and Pete at a pay phone booth so they could order the pizzas, the group parked the car down the street from the Raber Street house.  While Marin stayed in the car, the rest of the group waited near the house for the delivery man.  Maldonado and Gandara stood in front of the house while Zamorano and Garcia hid behind a car across the street.

When the delivery man, Phillip Ares (age 21), arrived on Raber Street, Gandara directed him to follow her to the house.  As Ares was walking toward the house, Zamorano approached him from behind, put the rifle against his back, and said, "Hold it, motherfucker, or I'll shoot you."  Gandara grabbed the pizzas from Ares's hands.  Maldonado and Garcia then searched Ares for money.  Maldonado took change from one of Ares's pockets while Garcia took bills from another pocket.

After the juveniles took Ares's money, Zamorano told him to turn around.  When Ares didn't comply, Zamorano warned him, "If you don't turn around, I'll shoot you through the back."  Ares again did not comply, and instead stood silently with his back to Zamorano.  After Zamorano told Ares to turn around a third time, Maldonado grabbed Ares by his arm and turned him toward Zamorano.  At that point, the rifle was pointed at Ares's stomach.  Zamorano told Ares, "I know you're going to snitch."

4

Zamorano then walked around Ares and shot him three times in the back. Ares died at the scene.

Immediately after the shooting, Maldonado and the rest of the group ran back to Marin's car. When Gandara asked Zamorano why he shot the delivery man, Zamorano "[j]ust laughed." According to Gandara, "we all laughed, just laughed"; "we didn't expect that he died." After the group picked up McRae and Pete, they drove to an alley, where they hid the rifle and split the proceeds from the robbery—a total of $47. The group then parked on a nearby street and ate the pizza.

## 2. *Maldonado's 1981 guilty plea*

Maldonado, Zamorano, and Marin were charged with murder and robbery with robbery-murder special circumstance and firearm enhancement allegations. Maldonado reached a plea agreement with the prosecution and, on January 7, 1981, pleaded guilty to second degree murder. The court sentenced him to 15 years to life in the state prison.

## 3. *Maldonado's 2019 petition for resentencing*

On January 2, 2019, Maldonado filed a petition for resentencing under section 1170.95. On a downloadable form, Maldonado checked boxes asserting he had pleaded guilty to murder under the felony-murder rule or the natural and probable consequences doctrine, he was not the actual killer, he did not aid or abet a murder with the intent to kill, and he was not a major participant in the underlying felony, nor did he act with reckless indifference to human life. On March 11, 2019, the trial court appointed counsel for Maldonado.

On July 2, 2019, the People filed a response to Maldonado's petition. They contended the court should deny the petition because section 1170.95 was unconstitutional. They also argued

Maldonado was ineligible for resentencing because he was a major participant in the robbery and acted with reckless indifference to human life. The People attached copies of the probation officer's report, a "follow-up investigation" police report, and the Gandara interview.

On November 1, 2019, Maldonado filed a reply in support of his petition. Maldonado attached copies of the probation officer's report and the Gandara interview "and incorporated [them] by reference." Maldonado argued section 1170.95 is constitutional. He also asserted he had established a prima facie case for relief.

Citing to and relying on his exhibits, Maldonado argued there was "no evidence that killing or discharging the gun was part of the plan when [he] agreed to join the other six juveniles for a 'simple robbery.'" Maldonado noted Gandara said in her interview that Zamorano had assured them nobody would get hurt, and that the group didn't "believe the victim was dead until the police told them."

Maldonado argued Gandara "appeared to be more sophisticated and had more culpability" than anyone except Zamorano: "Gandara was the one who decided they should call the pizza place ahead of time; she was the one who selected the delivery spot in a secluded area; she retrieved the murder weapon from the trunk of Marin's car, carried it up the stairs, and gave it to Zamorano." Gandara also "lured the victim to the chosen spot for the robbery, thereby placing Ares in front of Zamorano." Because his "co-participants, especially Zamorano and Gandara, were the masterminds behind the robbery and were involved in every stage of the criminal activity before and after commission of the robbery," Maldonado was not, he contended, a major participant.

Nor, Maldonado argued, was the evidence—presumably referring to his exhibits, as that was the only "evidence" before the court—sufficient "to support [a] finding that he acted with reckless indifference to human life." "[T]he group of juveniles had an apparent agreement that no one would be shot because Zamorano would only use the gun in case the pizza man were to attack them." Maldonado asserted he didn't have "the opportunity to stop the killing or intervene before Zamorano started shooting."

On November 12, 2019, the trial court issued an order to show cause, finding that section 1170.95 is constitutional and that Maldonado had made a prima facie showing of his entitlement to relief.

The parties appeared before the court on July 22, 2020 for the evidentiary hearing. Neither the prosecution nor Maldonado proposed to call any witnesses or to submit any additional evidence. The court noted the prosecution had to prove Maldonado could still be convicted under current law. The court told the prosecutor it seemed Zamorano, Gandara, and McRae "were the planners, not so much Maldonado." After hearing at length from the prosecutor, the court turned to Maldonado's counsel.

Counsel stated, "Now, in no particular order these are the following facts." Counsel noted, "[M]ost of the evidence that we have in this petition come[s] from Lisa Gandara's statements," adding, "that's what we have to work with because for some reason, the police did not obtain other statements from the other participants." Counsel said,

> "Mr. Maldonado did not possess or brandish
> a firearm at any time during the run up to

7

the robbery or during the robbery. He did not encourage Zamorano to shoot the victim. He did not provide the weapon or the ammunition to Zamorano. He did not expect or anticipate that Zamorano would shoot the victim apart from . . . Ms. Gandara's statement that Zamorano would shoot if the victim resisted, but nobody ever attributed a statement to Mr. Maldonado. [¶] . . . [T]he way Gandara described the incident, Mr. Maldonado did not have a chance to stop Zamorano from shooting the victim. It appears that after Mr. Maldonado and the other individual took the money from the victim's pockets, that they began to walk away from the victim. [¶] And Mr. Zamorano told the victim to turn around. The victim either did not do so or did not do so fast enough for Zamorano and Zamorano shot the victim three times."

Counsel continued,

"[T]he way Gandara summarized the incident to the detectives, it seems that although Zamorano may have known that he had shot the victim, it appears that the others did not know that the victim was mortally wounded until the next morning. Because apparently they expressed some surprise when the detectives told them that the victim had died. [¶] . . . Mr. Maldonado did not initiate the plan to rob the pizza delivery man. He did propose

8

specific details.[4]  He did not suggest a firearm. And also there wasn't any evidence, Your Honor, that Mr. Maldonado knew that Zamorano had a propensity to shoot or kill people."

After hearing rebuttal argument from the prosecutor, the court took the matter under submission.

On September 14, 2020, the trial court issued a detailed memorandum of decision denying Maldonado's petition.  The court found Maldonado was not entitled to relief because the evidence showed—beyond a reasonable doubt—that he was a major participant in the underlying felony and acted with reckless indifference to human life.  In finding Maldonado was a major participant, the court relied on "his later, but actual, participation in the planning, his participation in the robbery, his lack of action when it became apparent his co-perpetrator believed the victim needed to be killed, and his lack of aid to the victim."  In finding Maldonado acted with reckless indifference to human life, the court cited "his role as a late-stage planner and a participant in the armed robbery who was in a position to prevent the violence but did not."

### 4.  *Maldonado's additional contentions on remand*

As noted, in an opinion filed on September 23, 2021, this court affirmed the trial court's denial of Maldonado's petition. (*People v. Maldonado* (Sept. 23, 2021, B308300) [nonpub. opn.].) After our Supreme Court granted Maldonado's petition for review and transferred the case to us, both Maldonado and the Attorney

---

[4]  Counsel may have meant to say Maldonado did *not* propose specific details.

General filed supplemental briefs. (Cal. Rules of Court, rule 8.200(b).) Maldonado contends Senate Bill 775 "preclude[s] all of the evidence produced by the prosecution at the evidentiary hearing and relied on by the trial court and this court in denying [him] relief."

## DISCUSSION

**1.** *Section 1170.95*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) It limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder to ensure a person's sentence is commensurate with his or her individual culpability. (*People* v. *Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*); *People v. Lewis* (2021) 11 Cal.5th 952, 957, 971 (*Lewis*).) Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e). It provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference to human life as described in section 190.2, subdivision (d). (See *Gentile*, at p. 842.)

Senate Bill 1437 also authorized, through new section 1170.95, an individual convicted of felony murder (or murder under the natural and probable consequences doctrine) to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, *supra*, 11 Cal.5th at

10

pp. 959-960; *Gentile, supra,* 10 Cal.5th at p. 843.)  If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivisions (b)(3) and (c) require the court to appoint counsel to represent the petitioner, if requested; to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing he is entitled to relief.  (See *Lewis*, at pp. 959-960.)  If he has, the court then holds an evidentiary hearing at which the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d)(3).)

Senate Bill 775 amended section 1170.95 in a number of ways.[5]  One of those addressed the scope of admissible evidence at the evidentiary hearing.  As amended, section 1170.95, subdivision (d)(3) provides, in relevant part: "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion."

---

[5]     The Attorney General does not dispute that the amendments Senate Bill 775 made to section 1170.95 apply to cases not yet final.  (See *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006-1007.)  While not explicitly conceding the issue, the Attorney General notes the Supreme Court specifically ordered us to reconsider Maldonado's petition in light of Senate Bill 775 and, in any event, Maldonado could "simply file a new petition."

Hearsay evidence that was admitted at a preliminary hearing under subdivision (b) of section 872 is now inadmissible unless it falls within another exception to the hearsay rule. Both the prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens. (§ 1170.95, subd. (d)(3).)

## 2.  *Standard of review*

On appeal from an order denying a petition under section 1170.95, we "review the trial judge's factfinding for substantial evidence. [Citation.] We ' "examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt." ' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational factfinder's findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298. See also *People v. Owens* (May 18, 2022, B310427) ___ Cal.App.5th ___ [2022 WL 1565241, at *3] [we presume in support of the judgment the existence of every fact the trier of fact could reasonably have deduced from the evidence; we resolve neither credibility issues nor evidentiary conflicts].)

### 3. *Double jeopardy principles do not apply to section 1170.95 proceedings*

In his opening brief, Maldonado argued the constitutional prohibitions against double jeopardy precluded the trial court from finding he could be convicted of first degree felony murder under current law, given that he was convicted of only second degree murder. He also asserted that, to the extent he may have forfeited this claim on appeal, his counsel in the section 1170.95 proceeding was ineffective in failing to object on double jeopardy grounds. This contention is meritless.

The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 15, of the California Constitution provide that no person may be tried more than once for the same offense. (*People v. Aranda* (2019) 6 Cal.5th 1077, 1083.) The double jeopardy clause accordingly " 'protects against a second prosecution for the same offense following an acquittal or conviction, and also protects against multiple punishment for the same offense.' " (*People v. Anderson* (2009) 47 Cal.4th 92, 103-104.) A defendant must affirmatively raise a claim of double jeopardy in the trial court to preserve the issue for appeal. (*People v. Gurule* (2002) 28 Cal.4th 557, 646.)

Contrary to Maldonado's claim, the constitutional protections afforded by the double jeopardy clause do not apply to section 1170.95 proceedings. As our colleagues in Division 7 explained in *People v. Hernandez* (2021) 60 Cal.App.5th 94, 111, an "evidentiary hearing under section 1170.95 . . . does not implicate double jeopardy because section 1170.95 'involves a resentencing procedure, not a new prosecution.' " The retroactive relief section 1170.95 provides is a legislative act of lenity, intended to give defendants serving otherwise final sentences

13

the benefit of ameliorative changes to applicable criminal laws. It does not result in a new trial or increased punishment that could implicate the double jeopardy clause. (*Hernandez*, at p. 111.)

Accordingly, the trial court's finding that Maldonado could be convicted of first degree murder under a valid felony murder theory, and therefore was ineligible for resentencing, did not violate the rules against double jeopardy. For the same reason his counsel was not ineffective in failing to object on those grounds before the trial court. (See *People v. Bell* (2019) 7 Cal.5th 70, 127 [counsel not ineffective in failing to raise futile objection].)

**4.      *The Sixth Amendment right to confrontation does not apply in a section 1170.95 evidentiary hearing***

In his supplemental brief, Maldonado includes this heading: "THE TRANSCRIPT OF LISA GANDARA'S PRETRIAL DEPOSITION [*sic*] BY THE PROSECUTOR WAS INADMISSIBLE AT THE ORDER TO SHOW CAUSE HEARING AS VIOLATIVE OF THE CONFRONTATION CLAUSE." However, Maldonado presents no authority, or any real argument, to support his supposition that the confrontation clause applies in section 1170.95 proceedings. (Cf. *Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 867 ["an appellant must present argument and authorities on each point to which error is asserted or else the issue is waived"]; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655-656 [matters that lack adequate legal discussion will be deemed forfeited].)

In any event, while the "Sixth Amendment applies '[i]n all criminal prosecutions[,]' . . . [a] petition under section 1170.95 is not a criminal prosecution." (*People v. Silva* (2021)

14

72 Cal.App.5th 505, 520.) Thus, appellate courts consistently have held that the " 'retroactive relief provided by section 1170.95 reflects an act of lenity by the Legislature "that does not implicate defendants' Sixth Amendment rights." ' " (*Ibid.*; accord *People v. James* (2021) 63 Cal.App.5th 604, 610 [convicted person litigating section 1170.95 petition does not enjoy rights that Sixth Amendment guarantees to criminal defendants who have not yet suffered final conviction]; *People v. Perez* (2020) 54 Cal.App.5th 896, 908, review granted Dec. 9, 2020, S265254 [Senate Bill 1437 not subject to Sixth Amendment analysis]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156 [relief afforded by Senate Bill 1437 "constituted an act of lenity that does not implicate defendants' Sixth Amendment rights"].)[6]

Although Senate Bill 775 amended section 1170.95, subdivision (d)(3) to clarify the scope of evidence admissible at an evidentiary hearing, it did not provide petitioners with the right to confront witnesses at that hearing. Nothing in the language of the amended statute suggests the Legislature intended the admission of evidence at the hearing to be subject to the confrontation clause.

---

[6] The only case Maldonado cites in this section of his brief is *Crawford v. Washington* (2004) 541 U.S. 36. *Crawford* concerned the admission of testimonial hearsay against a defendant at a criminal trial. (*Id.* at pp. 53-54 [admission of testimonial statements of witness not appearing at trial violates defendant's confrontation rights unless witness is unavailable to testify and defendant had prior opportunity for cross-examination].) Section 1170.95 is an optional postconviction resentencing procedure: "A person convicted of [enumerated qualifying offenses] *may* file a petition." (§ 1170.95, subd. (a), italics added.)

15

**5.** ***Maldonado has forfeited any evidentiary objection to the Gandara interview and the probation officer's report***

Maldonado asserts section 1170.95, as amended by Senate Bill 775, bars the trial court from considering and relying on the transcript of Lisa Gandara's interview and the probation officer's report. Maldonado states, "These records were attached as exhibits to the People's response to Maldonado's section 1170.95 petition." Maldonado omits the fact that *he* also presented the interview and the probation report to the court as exhibits to *his* brief and incorporated them by reference. This omission is significant: Maldonado's own reliance on the two documents of which he now complains is a key fact in our analysis.

The Attorney General contends that, by "fail[ing] to raise any general evidentiary objections—let alone the specific hearsay objections . . . he now raises on appeal—to the trial court[ ]," as well as by relying on the probation report and the Gandara interview himself in seeking relief, Maldonado has "forfeited any evidentiary challenges" to those documents. We agree.

Dean Witkin's treatise states the general rule: "Where inadmissible evidence is offered, the party who desires to raise the point of erroneous admission on appeal must object at the trial, specifically stating the grounds of the objection, and directing the objection to the particular evidence that the party seeks to exclude. Obviously, failure to object at all waives the defect." (3 Witkin, Cal. Evidence (5th ed. 2021) Presentation at Trial, § 383 (Witkin). See Evid. Code, § 353[7]; *People v. Stevens*

---

[7]  Evidence Code section 353 provides, "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of

16

(2015) 62 Cal.4th 325, 333 [failure to object to the admission of hearsay at trial forfeits an appellate claim that that evidence was improperly admitted]; *People v. Eubanks* (2011) 53 Cal.4th 110, 142 [same]; *People v. Partida* (2005) 37 Cal.4th 428, 433-434 [" 'we have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable' "].)[8]

There is an exception to this general rule for a supervening change in the law: "Occasionally, new exclusionary rules, based on constitutional rights, develop in criminal cases. At the time of their announcement by the United States Supreme Court or the California Supreme Court, evidence may have been admitted in the trial of pending cases that would have been subject to objection if the new and unanticipated rule had been known at the time. In cases in which the judgment of conviction has not become final, the failure to object does not waive the error

---

evidence unless: (a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion; and (b) The court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a miscarriage of justice." (Evid. Code, § 353.)

[8] The treatise also states, "The waiver rule applies to evidence obtained in violation of constitutional guarantees." (3 Witkin, *supra*, Presentation at Trial, § 383.) As we have discussed, the confrontation clause does not apply in a resentencing proceeding; Maldonado's right to have evidence excluded is statutory only.

in admission of the evidence, and the point may be raised on appeal . . . ." (3 Witkin, *supra*, Presentation at Trial, § 410; see *People v. Perez* (2020) 9 Cal.5th 1 [defendant didn't forfeit confrontation clause claim to gang expert's trial testimony because court had not yet decided *People v. Sanchez* (2016) 63 Cal.4th 665 and objection thus would have been futile]; *People v. Edwards* (2013) 57 Cal.4th 658, 704-705 [no forfeiture of confrontation clause claim to autopsy report]; *People v. Brooks* (2017) 3 Cal.5th 1, 92 [objection by counsel to trial court's inquiry into numerical division of possibly deadlocked jury would have been futile].)

But Maldonado's appeal does not involve a mere failure to object to the Gandara interview and the probation report based on futility or any other ground. To the contrary, Maldonado himself submitted the interview and the report to the trial court as exhibits, incorporated them by reference, and argued their contents as the sole evidentiary basis for his request for relief. That the prosecution already had attached those same documents to its response to Maldonado's petition does not change our analysis or our conclusion. Nothing in the record suggests—much less demonstrates—that Maldonado submitted the interview and report only because he had to, given the prosecution's submission of them.

Indeed, Maldonado's counsel told the court, "[M]ost of the evidence that we have in this petition come[s] from Lisa Gandara's statements . . . ." Counsel noted there was no preliminary hearing because all three of the juveniles charged—including Maldonado—reached plea agreements early on. Counsel said Gandara's unsworn statement was "what we

have to work with because for some reason, the police did not obtain other statements from the other participants."

Nor did Maldonado submit his own declaration or any other evidence for the court to consider in ruling on his petition. (See § 1170.95, subd. (d)(3) [at the evidentiary hearing, both the prosecution and the petitioner "may also offer new or additional evidence to meet their respective burdens"].) Instead, he chose to rely on the Gandara interview and the probation officer's report, arguing they showed he neither was a major participant in the robbery nor acted with reckless indifference to human life.[9]

---

[9] Our dissenting colleague cites *People v. Turner* (1990) 50 Cal.3d 668. *Turner* was a felony-murder death penalty case. The underlying felony was robbery. Turner testified in his own defense. On direct examination, Turner's lawyer asked him about his two prior felony convictions, for robbery and receiving stolen property. (*Id.* at p. 682.) Among the many issues Turner later raised on appeal to the Supreme Court was the trial court's failure to exercise its discretion under Evidence Code section 352 to exclude the priors, and his trial attorney's failure to object to them coming into evidence. Stating the failure to object didn't bar the issue on appeal, the high court noted that Proposition 8 provided any prior felony conviction could be used " '*without limitation* for impeachment.' " (*Turner*, at p. 703.) About four months after Turner's trial, the Supreme Court decided *People v. Castro* (1985) 38 Cal.3d 301. *Castro* held Proposition 8 didn't eliminate the trial court's power and duty under section 352 to weigh the probative value of prior convictions against their potential for prejudice. (*Castro*, at pp. 305-313.) As a "reasonable and competent criminal trial attorney could well have surmised," before *Castro*, that any objection would be futile, the court addressed Turner's argument on the merits. (*Turner*, at pp. 703-704.) The court concluded, as both robbery and receiving stolen property "necessarily involve moral turpitude," the trial court's

A petitioner cannot say, "Judge, please read and consider this, and rule for me based on it," and—after an adverse ruling—later say, "You committed reversible error by doing what I asked you to do."[10]

**6.      *Substantial evidence supported the trial court's finding that Maldonado was ineligible for relief under section 1170.95***

In his opening brief, Maldonado challenged the sufficiency of the evidence supporting the trial court's finding that he was not entitled to relief because he could be convicted of first degree felony murder under current law.  While he contested the issue below, on appeal Maldonado does not dispute that there was sufficient evidence to support the finding he was a major

---

"broad authority" under *Castro* would have permitted it to admit —or to exclude—the priors.  (*Turner*, at p. 705.)

*Turner* involved the common practice of defense counsel— who know their client is likely to be impeached with prior convictions if he testifies—to ask about those on direct examination.  Fronting those facts for the jury lessens their sting. Here, by contrast, counsel wasn't faced with such a dilemma. He chose to bring before the court the interview and the report to support his contention that Maldonado was a minor player with little moral culpability who was entitled to relief under section 1170.95.

[10]      Because we conclude Maldonado forfeited his evidentiary objections to the Gandara interview and the probation officer's report, we need not address the Attorney General's contentions that "reliable hearsay" remains admissible at section 1170.95 evidentiary hearings and that Gandara's statements were admissible under the exception to the hearsay rule for declarations against interest.  (See Evid. Code, § 1230.)

20

participant in the robbery. Rather, he contends the evidence was insufficient to support the finding that he acted with reckless indifference to human life. We disagree, and thus conclude Maldonado could be convicted of first degree murder under a felony murder theory.[11]

      a.    *Banks, Clark,* and *Scoggins*

Section 189, subdivision (e)(3) provides a participant in certain felonies, including robbery, in which a death occurs, is liable for murder if the person was "a major participant in the underlying felony and acted with reckless indifference to human life as described in subdivision (d) of Section 190.2," the felony-murder special circumstance statute. Section 190.2, subdivision (d), in turn states "every person, not the actual killer, who, with reckless indifference to human life and as a major participant" aids or abets an enumerated felony, including robbery, that results in death may be convicted of special circumstance murder . . . . "The statute, by its text, imposes an actus reus requirement, major participant in the enumerated felony, and a mens rea requirement, reckless indifference to human life." (*In re Scoggins* (2020) 9 Cal.5th 667, 674 (*Scoggins*).)

More than 30 years after Maldonado's conviction, the California Supreme Court in *People v. Banks* (2015) 61 Cal.4th

---

[11] Maldonado also contends he could no longer be convicted of second degree murder under current law because there was insufficient evidence he acted with actual malice. In light of our conclusion that the evidence was sufficient to support the trial court's finding that Maldonado was ineligible for relief because he could be convicted of first degree felony murder, we need not consider whether Maldonado also was ineligible because he could be convicted of second degree malice murder.

788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*) identified the overlapping factors for assessing whether a defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life. In *Banks*, the high court listed the following factors to consider in determining whether the defendant was a major participant in one of the specified felonies: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, or did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks*, at p. 803, fn. omitted.)

In *Scoggins*, the Supreme Court listed the following factors to consider in determining whether the defendant acted with reckless indifference to human life: "Did the defendant use or know that a gun would be used during the felony? How many weapons were ultimately used? Was the defendant physically present at the crime? Did he or she have the opportunity to restrain the crime or aid the victim? What was the duration of the interaction between the perpetrators of the felony and the victims? What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force? What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins*, *supra*, 9 Cal.5th at p. 677; see *Clark*, *supra*, 63 Cal.4th at pp. 618-622.) No one

of these considerations is necessary, nor is any one of them necessarily sufficient. (*Scoggins*, at p. 677; see *Banks*, *supra*, 61 Cal.4th at p. 803.)

The reckless indifference element of a felony-murder special circumstance finding "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.) "Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' " (*Scoggins*, *supra*, 9 Cal.5th at p. 676; *Clark*, at p. 616; see *Banks*, *supra*, 61 Cal.4th at p. 808 [reckless indifference requires "knowingly creating a 'grave risk of death' "].)

Reckless indifference to human life thus has both a subjective and an objective component. (*Clark*, *supra*, 63 Cal.4th at p. 617.) Subjectively, the defendant must consciously disregard risks known to him. Objectively, recklessness is determined by "what 'a law-abiding person would observe in the actor's situation,' " that is, whether the defendant's conduct " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' " (*Id.* at p. 617.) The fact that a robbery involved a gun, by itself, is insufficient to support a finding of reckless indifference to human life. (*Ibid.*)

The *Clark* court, applying the relevant factors, held there was insufficient evidence to support a finding that the defendant —the "mastermind" who planned and organized a store robbery that ended in a fatal shooting—acted with reckless indifference to human life. Despite the defendant's significant involvement in planning the crime, the evidence showed he tried to minimize

the likelihood of violence by timing the robbery to occur after the store was closed and planning the use of one unloaded gun. (*Clark*, *supra*, 63 Cal.4th at pp. 621-622.)  The defendant wasn't in the store when the shooting took place, was unaware the shooter had loaded the gun with a single bullet, and had no prior knowledge that the shooter was likely to engage in violence. (*Id*. at pp. 619-621.)  The court thus concluded there was "nothing in the plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery." (*Id*. at p. 623.)

Similarly, in *Scoggins*, the court held the evidence insufficient to establish the defendant acted with reckless indifference to human life.  He had planned an unarmed assault and robbery, but one of his accomplices deviated from the plan and killed the victim. (*Scoggins*, *supra*, 9 Cal.5th at p. 676.) The victim had swindled the defendant in a sales transaction and, to exact revenge, the defendant recruited two friends to ambush the victim, " 'beat the shit' " out of him, and retrieve the defendant's money. (*Id*. at p. 671.)  As planned, the attack took place in a strip mall parking lot while the defendant waited at a nearby gas station.  When the victim arrived, however, one of the accomplices unexpectedly pulled out a gun and shot him. (*Id*. at pp. 671-672.)  The defendant had no knowledge a gun would be used in the attack or that his accomplices were likely to engage in lethal force; he wasn't present at the scene of the shooting or in a position to restrain the shooter; and he'd attempted to minimize the risk of death by planning for the assault to occur in a public place in broad daylight. (*Id*. at pp. 677-678, 681-683.)  Based on these facts, the court concluded

24

the defendant did not knowingly create a grave risk of death. (*Id.* at p. 683.)

  b. *Substantial evidence supports the trial court's finding that Maldonado acted with reckless indifference to human life*

  Maldonado contends the evidence merely reflected a plan to commit a garden-variety armed robbery of a pizza delivery man in which no one was supposed to be injured or killed. He also asserts he had no prior knowledge that any of his cohorts was likely to engage in violence, and he had no opportunity to intervene because the shooting happened impulsively after he'd already walked away. Maldonado thus argues there was nothing about his own actions in planning or carrying out the robbery that contributed to a heightened risk of death. Based on the totality of the evidence before the trial court, we disagree.

  The evidence showed Maldonado participated in the planning of an armed robbery during which the perpetrators expressly contemplated the potential for deadly force. While Maldonado didn't conceive of the idea to rob a pizza delivery man, he was present when the details of the plan were formulated and the roles in the robbery were assigned. As Gandara described it, all seven members of the group—including Maldonado—were in favor of the plan. They also agreed a rifle should be used. Although at one point Zamorano said no one was supposed to get hurt, he also told the group that, if the pizza delivery man pulled out a gun or tried to defend himself, "they were going to shoot him."

  Maldonado was physically present at the robbery during the entire sequence of events that resulted in the victim's death. After lying in wait for the victim on a secluded, dark street,

Maldonado actively participated in the robbery by searching the victim's pockets and taking his money while Zamorano held him at gunpoint. When the victim refused to comply with Zamorano's repeated demands to turn around, Maldonado grabbed the victim by his arm and turned him so he was directly facing Zamorano. Maldonado also was present when Zamorano walked around the victim, told the victim he knew he was "going to snitch," and then shot the victim three times in the back. While Maldonado contends he'd already walked away from the scene when Zamorano fired the shots, the record does not support his claim. Rather, Gandara recounted that both Maldonado and Garcia "were standing there" as Zamorano shot the victim, and the victim fell to the ground.

As the Supreme Court observed in *Clark, supra*, 63 Cal.4th at p. 619, "[p]roximity to the murder and the events leading up to it may be particularly significant where . . . the murder is a culmination or a foreseeable result of several intermediate steps, or where the participant who personally commits the murder exhibits behavior tending to suggest a willingness to use lethal force. In such cases, 'the defendant's presence allows him to observe his cohorts so that it is fair to conclude he shared in their actions and mental state. . . . [Moreover], the defendant's presence gives him an opportunity to act as a restraining influence on murderous cohorts. If the defendant fails to act as a restraining influence, then the defendant is arguably more at fault for the resulting murders.' "

In this case, Maldonado's presence at the scene gave him an opportunity to observe Zamorano's escalating violence and to intervene by either restraining Zamorano or rendering aid to the victim. Maldonado did neither. When Zamorano threatened

to shoot the victim in the back if he didn't turn around and face him, Maldonado didn't try to calm Zamorano down or dissuade him from carrying out his threat. Instead, Maldonado forced the victim to turn around. While Maldonado asserts he was trying to minimize the risk of violence by making the victim comply with Zamorano's demand, a rational factfinder could conclude otherwise. Given the sequence of events, one reasonably could infer that Maldonado placed the victim at greater risk of harm by turning him around, because that forced the victim to come face to face with the perpetrator holding the firearm and increased the likelihood the victim could identify him. Indeed, once the victim was facing Zamorano with the rifle pointed at his stomach, Zamorano appeared to become more agitated because he believed the victim was "going to snitch." Maldonado again did nothing to intervene, and instead stood by as Zamorano continued to act in a menacing manner toward the victim before shooting him in the back.

Maldonado's conduct after the shooting further supported a finding that he consciously disregarded the grave risk of death that resulted from his actions. Although he was present at the scene when Zamorano shot the victim, Maldonado didn't call for assistance or try to render aid. Instead, he fled with his companions in the getaway car. Maldonado argues he reasonably could've believed there was nothing he could do to help given the victim had been shot three times at close range. According to Gandara, however, "[n]obody thought [the victim] was dead." Morever, there was no evidence that Maldonado expressed any concern for the victim's welfare after the shooting. To the contrary, the evidence showed everyone in the group laughed about the shooting as they fled the scene, and they spent the

27

next few hours splitting the proceeds of the robbery and eating the pizza they'd taken from the victim. As Gandara described it, "[a]ll of us were in the car, and we all knew what happened. And we were eating the pizzas, and we were all laughing about it."

From this evidence, the trial court reasonably could find Maldonado exhibited a reckless indifference to human life. The cases on which Maldonado relies in challenging the reckless indifference finding are readily distinguishable. In each of those cases, the defendant was not present at the scene of the killing or not in a position to act as a restraining influence. (See, e.g., *In re Taylor* (2019) 34 Cal.App.5th 543, 559 [although defendant "was parked on the street near where the killing occurred, he never got out of the car and had no opportunity to prevent the shooting"]; *In re Ramirez* (2019) 32 Cal.App.5th 384, 404, 405 [defendant "was not at the immediate location of the killing," and was not "close enough to exercise a restraining effect on the crime or his colleagues"]; *In re Bennett* (2018) 26 Cal.App.5th 1002, 1024 [where defendant was across the street from the shooting, he "was never in close enough proximity to act as a restraining influence"]; *In re Miller* (2017) 14 Cal.App.5th 960, 975 [defendant was "absent from the scene of the killing, and therefore had no opportunity to stop it or to help" the victim].)

In contrast, Maldonado was present at the scene and in close proximity to Zamorano as the events leading to the victim's death unfolded, which allowed him to observe how the risk of violence was escalating. Maldonado also had an opportunity to intervene as Zamorano considered whether to kill the victim, but he never made any attempt to stop the shooting or to assist the victim. In that critical respect, Maldonado is more akin to the defendant whose failure to act

as a restraining influence on his cohorts supported a finding of reckless indifference to human life.  (See, e.g., *In re Parrish* (2020) 58 Cal.App.5th 539, 544 [although defendant "had the opportunity . . . to restrain [his] murderous partners and to help the victim," he "did not take these opportunities"]; *In re McDowell* (2020) 55 Cal.App.5th 999, 1014 ["there was a brief but critical opportunity for [defendant] to say or do something to deescalate the situation," but instead "he remained silent"]; *People v. Law* (2020) 48 Cal.App.5th 811, 825, review granted July 8, 2020, S262490 [where defendant was "at the scene of the shooting, he could have tried to stop his accomplice's violent behavior or to help the victim once he had been shot, but he did neither"]; *In re Loza* (2017) 10 Cal.App.5th 38, 54 [defendant "neither intervened to dissuade [his cohort] from shooting either [victim] nor came to either [victim's] aid after the shooting"].)

Considering the totality of the record in this case, the evidence was sufficient to support the trial court's finding that Maldonado was a major participant in the robbery and acted with reckless indifference to human life.  Because Maldonado was not entitled to relief under section 1170.95, the trial court did not err in denying his petition.

## DISPOSITION

We affirm the order denying Lorenzo Ricardo Maldonado's section 1170.95 petition.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EGERTON, J.

I concur:

EDMON, P. J.

30

LIPNER, J., Dissenting.

I respectfully dissent from the majority's decision that Lorenzo Ricardo Maldonado forfeited his challenge to the admissibility of evidence under the newly enacted amendment to Penal Code section 1170.95.[1]  I would reach the issue and remand to allow the trial court to consider Maldonado's petition under the evidentiary rules imposed by the new amendment.

The California Supreme Court transferred the case to us with directions to vacate our prior opinion and reconsider the matter in light of the amendment in Senate Bill No. 775 (Stats. 2021, ch. 551).  The amendment changed the law governing Maldonado's petition for resentencing.  Before the amendment, courts conducting evidentiary hearings under section 1170.95 allowed the admission of reliable hearsay not otherwise permissible under the Evidence Code. (*People v. Harris* (2021) 60 Cal.App.5th 939, 953–954, review granted Apr. 28, 2021, S267802; *People v. Williams* (2020) 57 Cal.App.5th 652, 662.)  But the amendment, which took effect on January 1, 2022, provides to the contrary that the "admission of evidence in the hearing shall be governed by the Evidence Code."  (§ 1170.95, subd. (d)(3).)

Because of this change in the law, I cannot agree with the conclusion that Maldonado forfeited his argument by relying on hearsay documents—the Lisa Gandara interview transcript and the probation report.  Maldonado's appointed defense counsel relied on these documents only after the prosecution—which had the burden of proof beyond a reasonable doubt—introduced these

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

materials.  Moreover, there was nothing wrong with Maldonado's counsel relying on hearsay documents because the law at the time provided that they were admissible.  Indeed, everyone involved—the prosecutor, the defense counsel, the trial court, and this court in its original panel decision—acted correctly under former law by relying on hearsay that was reliable.  But afterwards, the Legislature changed the law.

Under these circumstances, Maldonado should not be held to have forfeited his right to rely on the amended law by failing to have prophesied that the Legislature would enact it.  The determination of forfeiture, in my view, conflicts with *People v. Perez* (2020) 9 Cal.5th 1.  In that case, our Supreme Court held that it was error to find forfeiture of an appellate argument where defense counsel, prior to *People v. Sanchez* (2016) 63 Cal.4th 665, failed to object at trial to a prosecution expert testifying to case-specific hearsay.  The Supreme Court determined that *Sanchez* was a change in law and recognized that reviewing courts have excused parties for failing to raise an issue at trial " ' "where an objection would have been futile or wholly unsupported by substantive law then in existence." ' " (*Perez*, at pp. 7–8.)  The Supreme Court explained that requiring an objection under such circumstances would place an unreasonable burden on defendants to anticipate unforeseen changes in the law.  (*Id*. at p. 8.)

The majority correctly notes that *Perez* dealt with a failure to object (maj. opn. *ante*, at p. 18) rather than a defense attorney relying on evidence that later became inadmissible because of a change in law.  But the reasoning of *Perez* is, in my view, explicit that defendants should not be found to have given up arguments

2

because they did not anticipate future changes in the law. That reasoning applies with force here.

Moreover, our Supreme Court has previously concluded there was no forfeiture in a case in which the defendant himself introduced evidence that became inadmissible after a change in the law. In *People v. Turner* (1990) 50 Cal.3d 668, the defendant did not object at trial to evidence of his prior convictions and in fact elicited testimony about the existence and nature of the convictions during his direct examination of defendant. (*Id.* at pp. 703–704.) After trial, in a different case, the California Supreme Court held that evidence of prior convictions were inadmissible except in limited circumstances. The Supreme Court held that neither defendant's failure to object nor his own introduction of this evidence was a forfeiture of his appellate argument because there had been a change in the law. (*Id.* at pp. 703–704 & fn. 18.) The Supreme Court explained, "Given the apparent futility of an effort to exclude the prior convictions," under prior law "prudent counsel would be well advised to minimize their 'sting' by eliciting them himself. Such defensive acts do not waive an objection on appeal." (*Id.* at p. 704, fn. 18.)

Defense counsel's reliance on materials the prosecution had already admitted, and his failure to object to them, was reasonable under prior law. A contrary course of action would have been futile and counterproductive at the time. Under these circumstances, I do not agree with the finding of forfeiture.

On the merits, the People argue that notwithstanding the new statutory amendment, trial courts may nevertheless continue to consider reliable hearsay in evidentiary hearings under section 1170.95. This argument is not consistent with the statutory language.

As amended by Senate Bill No. 775, section 1170.95, subdivision (d)(3) now states the "admission of evidence in the hearing shall be governed by the Evidence Code," subject to two exceptions not at issue here.[2]  In the absence of such restrictive statutory language, courts generally allow reliable hearsay in postconviction proceedings.  (*People v. Maki* (1985) 39 Cal.3d 707, 715; *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1097; *People v. Hall* (2019) 39 Cal.App.5th 831, 837–838.)  Prior to the recent amendment, this rule applied to hearings under section 1170.95.  For example, in *People v. Williams*, *supra*, 57 Cal.App.5th at page 661 the appellate court explained, "In allowing for the section 1170.95 postconviction proceeding, *the Legislature gave the superior court unfettered discretion to consider 'evidence' without any restriction* at the subdivision (d)(3) hearing to determine the petitioner's eligibility for resentencing."  (Italics added.)  The appellate court noted that the Legislature could have added such language but chose not to.  (*Id*. at pp. 661–662.)

Now, with the Senate Bill No. 775 amendment, the Legislature has added restrictive language that no longer permits courts unfettered discretion to consider evidence.  The language requires that the "admission of evidence in the hearing shall be governed by the Evidence Code."  (§ 1170.95, subd. (d)(3).)

---

[2] Those exceptions are (1) "the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," and (2) the "court may also consider the procedural history of the case recited in any prior appellate opinion."  (§ 1170.95, subd. (d)(3).)

No provision of the Evidence Code permits the admission of hearsay on the basis that it is asserted to be reliable.

Accordingly, I would remand the case to the trial court to conduct a hearing in accordance with the new statutory requirements.[3]  There is no dispute that the documents relied upon by the prosecution were hearsay, though there remains a reasonable dispute as to whether the documents were nevertheless admissible under the Evidence Code based on an exception to the hearsay rule.  The trial court, which has not ruled on the issue, should decide that issue in the first instance.

For these reasons, I respectfully dissent.


LIPNER, J.[*]

---

[3] I agree with the majority that double jeopardy principles and the Sixth Amendment right to confrontation do not apply to section 1170.95 proceedings.  (Maj. opn. *ante*, at pp. 13–15.)  In fact, I would be in agreement with the entirety of the majority's reasoning but for the pivotal forfeiture issue.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

5